# Martha May's Appeal.

*Construction of Will.—Alternative Legacy.—Legacies to a Class of Legatees with Limitation over, discussed.*

1. If a legacy be given to one by name, and in the event of his death to another, the alternative gift will take effect, if the first legatee die in the testator's lifetime.

2. So where a legacy is given to a class, and in the event of the death of one who would have been a constituent of the class before a defined period, his share over to another, that other will take, though the first legatee die in the lifetime of the testator: the alternative gift will be supported, if the first legatee be one who would have taken had he lived to the period of distribution.

3. A testator by will bequeathed the residue of his estate to his grand-children, the children of his two daughters, "to be paid to them, share and share alike, as they shall respectively arrive at the age of twenty-one years, but in the event of the death of any one of the said grandchildren, before he

[Martha May's Appeal.]

or she shall arrive at the age of twenty-one years," then, "the share of him or her so dying" "to the mother," "if living." A son of one of the daughters dying in the lifetime of the testator, under the age of twenty-one, unmarried and without issue, his share was claimed by his mother; *Held*, that the mother was entitled to take, with the other grandchildren, an equal share of the residue of the testator's estate.

APPEAL from the Orphans' Court of *Chester county*.

This was an appeal by Martha E. May from the decree of the Orphans' Court, distributing the estate of Samuel Shaffer, deceased.

The following are the material facts of the case, as disclosed by the able report of the auditor (P. Frazer Smith, Esq.), to whom the case was referred :—

"Samuel Shaffer died April 26th 1856, having made his will, dated September 26th 1855, and proved May 14th 1856, of which he appointed Addison May, Joseph Neide, and Henry Shaffer, the executors. Letters testamentary were granted to Addison May and Joseph Neide.

"The testator left some real estate, and a large personal estate.

"By his will, Judge Shaffer gave several legacies to his collateral relatives, and to benevolent objects; and, besides some chattels to his daughter Elizabeth May, he gave to each of his daughters Rebecca Neide and Elizabeth May, the sum of $40,000.

"He then disposes of the residue of his estate as follows, viz.: 'I give and bequeath the remainder, or balance of my estate, after paying all the legacies, and debts, and expenses of settling my estate, to all my grandchildren, to wit, the children of my daughter Rebecca Neide, and the child or children of my daughter Elizabeth May, to be paid to them, share and share alike, as they shall respectively arrive at the age of twenty-one years; but, in the event of the death of any one of the said grandchildren before he or she shall arrive to the age of twenty-one years, then, in that case, I order and direct my executors to pay the share of him or her, so dying, to the mother of the child, if living; if not living, to the father, if living; if not living, then to be equally divided to and amongst those of the grandchildren living, share and share alike. I desire and so direct my executors to invest the aforesaid remainder, or balance of my estate, devised as above mentioned, to my grandchildren, in safe mortgage security, and the interest annually accruing thereon to be invested safely, in order that the grandchildren may derive the greatest benefit from the aforesaid legacies, as they shall respectively arrive to the age of twenty-one years, at which time I order and direct my executors to pay to the one of age his or her share of the principal and interest.'

"At the date of the will, Judge Shaffer had the following grand-

5 WR.—33

children, viz. : Martha E. May, only child of his daughter Eliza-
beth May ; Horace Neide, Carroll Neide, Samuel S. Neide, Alice
Neide, Martha S. Neide, Ann H. Neide, and Sarah Neide.  Of
these, Samuel S. Neide died in the lifetime of the testator, under
the age of twenty-one years, unmarried, and without issue.  Two
other children were born to Mrs. Neide after the death of her
father, viz. : Bayard Neide, who was *en ventre sa mere* at the
testator's death, and Erskine Neide, who was born March 28th
1858.  Horace Neide, the eldest of the grandchildren, attained
the age of twenty-one years December 21st 1858.  All the other
grandchildren, by both daughters, are yet minors.

" Three questions arose under the circumstances in this case :—

" 1. Is Bayard Neide, who was *en ventre sa mere* at the death
of the testator, entitled to a share of the residue ?

" 2. Does Erskine Neide, who was born after the testator's
death, but before the eldest residuary legatee attained the age of
twenty-one years, take a share of the residue ?

" 3. What is the effect of the death of Samuel S. Neide in the
life of the testator, under the age of twenty-one years, on the
share that was intended for him ?"

After answering the first two questions in the affirmative, the
auditor proceeded :—

" In regard to the third question, there appeared at the first
blush more difficulty.  But an examination of the principles
which are to be found in the authorities—both decided cases
and elementary writers—in the auditor's view, makes the proper
conclusion perfectly clear.

" We start with the undisputed proposition, that where there
is a legacy to A., or to A. when he attains the age of twenty-one,
and he dies in the lifetime of the testator, either before or after
he has attained the age of twenty-one years, the legacy lapses
and sinks into the residue, or if it be itself the residue or part
of the residue, it is estate which is undisposed of.

" So is the general rule as to legacies given to persons as tenants
in common.  It is proper, therefore, here to inquire what form
of bequest is to be construed to give the legatees interests as
tenants in common.  The rule, on this point is, that any expres-
sions which import a severance create a tenancy in common, as
where the legacy given to two or more in equal shares, or share
and share alike, &c.: 2 Rop. on Leg. ch. 21, § 2, old edition
p. 264 ; Heath *v.* Heath, 2 Atk. R. 221.

" With respect, then, to legacies given to persons as tenants in
common, the rule is this : where distinct legacies are given to
individuals, or an aggregate fund is divided among them, *nomi-
natim*, in equal shares, their interests are several, and if any of
them die before the testator, what was intended for those legatees
will lapse, because the others have no interest in the benefits
intended for the deceased legatees, each legatee being solely

entitled to his own legacy, or proportional share: 1 Rop. on Leg. ch. 8, § 4, pl. 2, p. 485, new edition; 2 Wms. on Ex'rs. 1093, part 3, book 3, ch. 2, § 5; Bagwell *v.* Dry, 1 P. Wms. 700.

"But if a legacy be given to two or more persons jointly, although one of them die before the testator, the interest of the legatee dying will not lapse, but will survive to the others, because all were interested in the whole legacy: 1 Rop. *ut supra*, pl. 1, p. 483.

"In the foregoing statements of the rules relating to tenants in common, and joint tenants respectively, we see the reason why, in one case, the legacy will lapse by the death of the legatee in the lifetime of the testator, and in the other it will not, viz., because in the one case, each tenant in common had no title to any but his own particular and definite part; the joint tenant, on the contrary, had an ownership in the whole. The counsel for Miss May, however, did not urge that the share of Samuel S. Neide lapsed, and therefore, being part of the residue, it was to be distributed amongst the testator's next of kin, as undisposed estate. But he claimed, that under the words of the residuary clause, Samuel's share would survive to the other grandchildren of the testator. It was not alleged that the gift was joint, and, therefore, survived by the *jus accrescendi;* but the claim was put upon the ground, that the gift of the residue was to a class, and therefore, those, and those only, who belonged to that class at the time of the distribution, were entitled to take.

"The distinction between gifts to a class of persons, in general terms, as tenants in common, and gifts to particular objects at the time of distribution, is well defined.

"In the latter case we have seen that the legacy will lapse by the death of the legatee in the life of the testator; but in the former case, the gift to legatees, as a class, those persons answering the description at the time of the distribution, will take the whole gift: 1 Rop. on Leg. ch. 8, § 4, pl. 1, p. 487; 2 Wms. on Ex'rs., part 3, book 3, ch. 2, § 5, p. 1093; Gross' Estate, 10 Barr 360.

"Under the operation of that rule, if the bequest in this case ended with the gift to the grandchildren, those of the grandchildren living when Horace Neide came of age, and they only, would be entitled to the whole of the legacy.

"This brings us to the inquiry, what is the effect of the limitation over to the parents of the grandchildren, in case of the death of any one of them before reaching the age of twenty-one years.

"The counsel for Miss May concedes that if Samuel had died under the age of twenty-one, and after the time of distribution, the legacy would have gone to his mother; but, inasmuch as he died before the time of distribution, and especially as he died in

[Martha May's Appeal.] .

the lifetime of the testator, it is asked that a different rule be applied. No authority has been cited for this, except those which establish the general position that the survivors of a class take, in case of the death of any before the time of distribution, nor has any principle been suggested on which to base such distinction. The authorities, however, lead to a different conclusion, which, it will be seen, is founded on reason. It is now well settled, that when there is bequest over, in case of the death of the legatee before a certain time, and the legatee dies before the time, although in the lifetime of the testator, the bequest over will take effect: 1 Rop. Leg. ch. 8, § 3, pl. 3, p. 482.

" Even in a joint bequest, if there be a limitation over, in case of the death of one of the legatees before specified time—on the death of one of the legatees before the period named, although in the lifetime of the testator, the gift will go to the legatee. Whilst, if the legatee survive the time named, and die in the lifetime of the testator, the legacy will go to the survivors in the joint bequest, in the same manner as if there had been no such limitation: 1 Rop. Leg., ch. 8, § 4, pl. 1, p. 484.

" Gifts to tenants in common, with limitations over, are subject to the same rules as legacies to individuals. It is clearly established that when legacies are given to persons as tenants in common, with a limitation to survivors, upon the death of any one of them under twenty-one—if any die under that age, before the testator, the legacy will go to the survivors, from the effect of the words, and by the express provisions of the will: 1 Rop. Leg. pl. 2, 489, 492; 2 Wms. on Ex'rs., part 3, book 3, § 5, p. 1094; Walker *v.* Main, 1 Jac. & Walker 1; Mackinnon *v.* Peach, 2 Keen 555; Le Jeune *v.* Le Jeune, Id. 701; Mowatt *v.* Carrow, 7 Paige 336-7, 340.

" Where there was a legacy of 1500*l.* to the four children of the testator, to be paid to them at a certain period, and if any died before time of payment, the legacy to go to the survivors, one died in the lifetime of testator, before the time appointed: it was held that it went to the survivors, the court putting the limitation over to survivors on the same ground as a legacy to A., at twenty-one, and if he died before twenty-one, to B. In such case it is undisputed that, if A. died before twenty-one, although in the lifetime of testator, the limitation over took effect: Miller *v.* Warren, 2 Vern. 207.

" Where there was a bequest to testator's first cousins as tenants in common, and in case any should die before the legacies became 'due and payable,' the issue of the one so dying should take. Testator had several first cousins at the date of the will—two died in his lifetime, and before the legacies were due and payable, one leaving issue, and the other without issue. Sir Knight Bruce decided that the share of one went to the issue, and that

of the other to the survivors of the class: Court *v.* Winder, 1 Colliers 321.

" This last case in itself presents two aspects of the result when there is a limitation over, and the first legatee dies in the lifetime of the testator—first, where the legatee over was in being, and took the gift; and, second, where there was no one to take as legatee over, and therefore the gift went to the survivors of the class.

" Again: where there was a bequest of 200*l.* to each of testator's children, payable at twenty-one, and if any died before twenty-one, then to the survivors—held that where in such case the legatee dies in the lifetime of testator, the legacy lapses as to the legatee so dying, but is well given over to the survivors: Willing *v.* Baine, 3 P. Wms. 113.

" In Mowatt *v.* Carrow, cited above, the same thing substantially is said by Chancellor Walworth, who further says that the legacy over is itself an original gift.

" These two cases put the rule on reasonable grounds, and authorize us to state the following as a correct proposition, viz., that in such cases there are two distinct substantive gifts of the same thing, and that it is just as certain that the testator intended the legatee over to take upon the happening of a named event, as it is that he intended the first legatee to take, if the event did not happen. One was not more *certainly* an object of his bounty, because he was preferred to the other. All that is required in either case is, that the circumstances under which the legatees are respectively to take should exist, and that the legatee who is to take under the circumstances existing should himself survive the testator. To say that the first legatee should not take because the legatee over died in the lifetime of the testator, would be no more illogical than to say that the legatee over should not take, because the first legatee died in the lifetime of the testator; neither, in this respect, is dependent on the other.

" It may be added that the words of the residuary clause could not be carried out by the application of any other rule. Indeed, if the rule were as contended by Miss May's counsel, it would not be applicable here, for the intention gathered from the clause is entirely inconsistent with it, and would altogether override it. For the testator has himself directed that both parents of any grandchild dying under twenty-one, shall take before the survivors of the grandchildren shall be entitled.

" The auditor is therefore of the opinion that Bayard Neide, Erskine Neide, and Rebecca Neide, the mother of Samuel S. Neide, deceased, each take with the other grandchildren an equal share of the residue of the testator's estate."

To this report exceptions were filed for Martha E. May, to the effect that the auditor erred in awarding a share of the estate to

Rebecca Neide.   On hearing, the Orphans' Court dismissed the exceptions and confirmed the report of the auditor.

The case was thereupon removed into this court, where the awarding a share of the estate to Rebecca Neide was assigned for error.

*William Darlington*, for appellant, argued that the legacy here is to a *class*, and not *nominatim*.  It is to be paid to them as they respectively arrive at the age of twenty-one years. Samuel S. Neide died after the date of the will, and before the testator.   When a legacy is given to a *class*, those only who answer the description when the legacy is payable, can take : 1 Rop. on Leg. 333 ; 2 Wm's on Ex'rs. 1093.   The leading case on this subject, is Viner *v.* Francis, 2 Cox 190.

Williams on Ex'rs. 1093, states the rule thus :—When a legacy is given to a class of persons in general terms, as tenants in common, as to the children of A., the death of one of them before the testator will not occasion a lapse of any part of the fund, but those of the described class who survive the testator, will take the whole.   Recent decisions in England are to the same effect : Leigh *v.* Leigh, 17 Beav. 605.

The doctrine of the case of Viner *v.* Francis is recognised and approved in many cases in England and New York, and is fully adopted in Pennsylvania : Shuttleworth *v.* Greaves, 4 M. & C. 38 ; Lee *v.* Pain, 4 Hare 250 ; Cort *v.* Winder, 1 Coll. 323 ; Mowatt *v.* Carrow, 7 Paige 342 ; Collin *v.* Collin, 1 Barb., ch. 637 ; Pemberton *v.* Parke, 5 Binn. 601 ; Gross's Estate, 10 Barr 360.

The auditor recognises the rule as above stated, and admits its control in the present case, were it not for the limitation over to the parents of the grandchildren in case of the death of any one of them before twenty-one.   He conceives the mother takes the share of the child by *substitution*.

The error lies in supposing there was any legatee in whose place she could be substituted.   " Substitution assumes that the party dying was an object of the gift :" Wordsworth *v.* Wood, 4 M. & C. 644.

But Samuel J. Neide never was an object of the gift.   He is not named, nor did he answer the description at the testator's death.   He was not one of the class.   All the authorities prove that he was in all events excluded.

Those, and those only, who answer the description at the time the legacy is payable, can take.   When is it ascertained who compose the class ?   Never before the death of testator, and whether then, or at some subsequent time, is immaterial in the present case.   At the earliest moment when the class can be ascertained, he did not belong to it.   The statement of the pro-

[Martha May's Appeal.]

position would seem to be all that is necessary to answer the position assumed by the auditor. Indeed the doctrine maintained by his report would practically overturn and obliterate the rule in Viner *v.* Francis, and instead of a legacy to a class, taking effect in favour of those who answer the description, it would go elsewhere regardless of the settled rules of law.

The authorities upon which the auditor relies for his decision, do not sustain him. All the cases of substitution cited by him, were cases in which the gift to the legatee was by name, or which depend on the peculiar terms of the will, and are all inapplicable to a legacy to a class. They all steer clear of the principle which applies to legacies to a class.

No violence is done to the will of the testator by the construction contended for. Having given Mrs. Neide $40,000, it was no part of his plan to increase her legacy at the expense of his grandchildren. His evident purpose was, if, after their small legacies should vest in his grandchildren, any of them should die under age, and without issue, their share should go to the parent. He did not mean to diminish his grandchildren's legacies, for the benefit of their mother, already amply provided for.

*Joseph J. Lewis,* for appellee.—By the terms of the gift, the intention of the testator is indubitable. It is that his grandchildren shall each have an equal share of the residue at the age of twenty-one, if they attain that age. If either or any die under twenty-one, the share of the grandchild so dying is to be paid to the mother, if living; if not living, to the father; if both father and mother be dead, to the other grandchildren, equally. Thus, before a distribution among survivors can take place, both the father and mother must be dead. A grandchild was living when the will was made, and died leaving to survive him his mother, who continued to live to the period of distribution, and is living yet. She is the person designated by the will to take, in place of her dead child. Is there any inflexible rule of law which will override and trample down this plain intent? The appellant says that there is; and that although the surviving grandchildren are postponed to both father and mother by the testator, they shall nevertheless have the legacy divided among them with the same effect as if all that relates to father and mother were blotted from the will. A rule working such results, ought to be clearly made out.

The argument is, that the legacy here is to a class, and that when a legacy is given to a class those only who answer the description when the legacy is payable can take. The argument begins with that proposition and ends with it.

We admit that there is such a rule, and that the rule is a very

good one when applied to the cases that it fits; but that where there is a limitation over in the event of any one of the class dying before the day of distribution, there is no power in the rule to prevent the limitation from taking effect.

As a general principle it is undeniable that, where there is a bequest over, if the first legatee die before a certain time, the bequest ˙s effectual in case of the legatee's death in the testator's life, and before the time: 1 Roper 482, § 3, p. 3; Williams *v.* Baine, 3 P. Wms. 113; Walker *v.* Main, 1 Ja. & Walker 1; Humbustone *v.* Staunton, 1 Ves. & B. 388. This principle applies to legacies given to tenants in common, with a limitation over, as to other cases: 2 Roper on Leg., ch. 8, § 5, p. 488. There is no case which decides that where the gift is to a class, with a limitation over, in the event of the death of the legatee before twenty-one, the limitation shall not take effect if the legatee dies in the testator's lifetime. The limitation rests on the intention of the testator, and is made effectual in order to answer that intention. Is there any reason why such intention should not be regarded in the construction of a gift to a class, as well as to tenants in common by name? None has been given, and none is perceived. The legacy is to go over if the legatee dies before twenty-one, and no distinction is made between dying before and dying after the testator. If the testator has made no distinction in this respect, how shall the court make any? He has chosen to substitute the mother for the child in a certain event, which has happened; why should the court say that that event must be after a period not mentioned by the testator, in order to give effect to the substitution? In Cort *v.* Winder the gift over, though the legacy was to a class, was held good, because it was competent for the testator to make such a gift, and it was not deemed right to manufacture any new rule of law, or misapply an old one to defeat it. The limitation stood upon the express provisions of the will there, as it does in all these cases of the death of the legatee in the testator's lifetime; and the case of a gift to a class, which Cort *v.* Winder was, is not made an exception. The authorities cited by the auditor sustain him, and so do the well-understood principles of law also. Cort *v.* Winder, 1 Collyer 321, is, in all essential particulars, the same as the case in hand, and decides two points:—1. When a gift is to a class, with a limitation over, and the legatee dies before the day of payment, in the lifetime of the testator, the limitation takes effect. 2. Where there is no person to take, under the limitation over, the persons that answer the description, as a class, at the period of distribution, take the whole.

The doctrine, therefore, for which the appellant contends obtains where there is no bequest over; but it does not obtain

where there is a bequest over. In such case the substituted legatee shall have the legacy, if the first legatee dies at any time after the date of the will, and after the day of distribution.

The case of Willing v. Bane, 3 P. Wms. 113, fully accords with Cost v. Winder.

The case of Smith v. Smith, 8 Simons 353, appears to stand on the same principle, and bears a strong likeness to the one in hand. It answers beside, by anticipation, one of the appellant's arguments. The lord chancellor does indeed say, *arguendo*, in Wordsworth v. Wood, "substitution assumes that the party dying was an object of the gift." That idea he derives from Thornhill v. Thornhill, 4 Madd. 377, which case, the vice-chancellor says, in Smith v. Smith, "is wrong." In Gray v. Garmon, 2 Hare 271, it was further considered, and it was said:—" It has been made a question, whether the capacity of a primary legatee (at the date of the will), to take the legacy was alone sufficient; whether such legatee must not survive the testator, become a legatee in *esse*, and not have been a legatee in *posse*, only to entitle his issue to claim by substitution: Thornhill v. Thornhill. But later cases appear to sanction a more liberal, though still a literal construction of language like that I am considering, and it has been held, that the issue of a person primarily pointed out, as the object of the testator's bounty, and living at the date of the will, may take, by substitution, for that party dying in the lifetime of the testator: Smith v. Smith, 8 Simons 353; Collins v. Johnson, Id. 326 n.; Le Jeune v. Le Jeune, 2 Keene 701. The doctrine of substitution is considered in Mowatt v. Carron, 7 Paige 377, with reference to Leadsome v. Hickman, 2 Vern. 611; Bird v. Lockey, 2 Id. 744; Willing v. Baine, 2 P. Wms. 113. The principle that the legacy to the substituted legatees, does not lapse by the death in the lifetime of the testator of the legatee, in whose place they are substituted by the will, is also fully recognised in several recent decisions in the Court of Chancery, in England: 1 Rus. & Myl. 639; 2 Myl. & K. 69; 3 Keene 701; 1 C. P. Cooper's Rep. 172. Le Jeune v. Le Jeune, 2 Keene 701, is not only an authority on the doctrine of substitution, but on the main point. There was a gift to a class, as in Cort v. Winder, Willing v. Baine, and Smith v. Smith, and the same conclusion was reached. The death of one of the class occurred prior to the period of distribution, and in the testator's lifetime; and it appearing to the court, that the intention of the testator was, to substitute a legacy to one of a class dying prior to the period of distribution, the substituted legatee took the share that the first legatee would have taken had he lived. The only question entertained in any of the cases was as to the intention of the testator. It is nowhere suggested, that the intention, in such cases, is to give way to any artificial rule of construction. On

[Martha May's Appeal.]

the contrary, the great, leading, primary rule, in the interpretation of wills, that the intention of the testator shall govern, is, in all of them, constantly appealed to, and steadily applied. No. reason has been given, for the decision of this case on a different principle; and the intention of Judge Shaffer being manifest, that if Samuel J. Neide should die within the period between the testator's death and the arrival of his grandchild at twenty-one, his mother, if living, should have his share, the report of the auditor and the judgment of the Orphans' Court are right.

The opinion of the court was delivered, February 10th 1862, by STRONG, J.—This case is not free from difficulty, but we think it was rightly decided. It is conceded that if a legacy be given to one by name, and in the event of his death to another, the alternative gift will take effect, if the first legatee die even in the testator's lifetime. But it is argued that this rule is not applicable to legacies to a class, the constituents of which cannot be ascertained until the death of the testator, or some subsequent period. It is said that Samuel J. Neide, who died in the lifetime of his grandfather, was no legatee, and therefore that he had no share to go over to his mother in case of his death. It is true he never became a legatee *in esse*, but he was a possible one, and would have been entitled to a share if he had survived the testator, and obtained the age of twenty-one years. There is, undoubtedly, considerable reason for distinguishing between substitutionary legacies after an immediate gift to individuals *nominatim*, and such legacies after a gift to a class. But the cases seem to hold, that even when a legacy is given to a class, and, in the event of the death of one who would have been a constituent of the class, before a defined period, his share over to another, that other will take though the first legatee die in the lifetime of the testator. In other words, the alternative gift will be supported, if the first legatee be one who would have taken had he lived to the period of distribution. Such is the doctrine of Cort *v.* Winder, 1 Collyer 321. There the bequest was to the testator's first cousins germain, share and share alike, as a class. It was then added, "and in case any of my said cousins shall depart this life before their respective share of the residue of my moneys and personal estate shall become due or payable, leaving any lawful issue him or them surviving, I direct that such issue shall have and be entitled to the same share or shares of the same residue and moneys as his, her, or their parent or parents would have been entitled to if living." One of the cousins died after the date of the will, and before the testator, leaving issue. It was held that the issue took what would have been the share of the deceased cousin, had he lived. It might indeed be said of this case, that the legacies to the first cousins germain vested in

the persons included in the class at the death of the testator. The contingency of the death of any one, so as to let in his issue, must have happened, if at all, in his lifetime; and it must have been that he intended to speak of death before the will should take effect. There was no other to which the death of the first legatee could be referred. The case was, however, not ruled upon this ground. And in Smith v. Smith, 8 Simons 353, we have a case in which there was a period after the decease of the testator, to which the contingency of the death of the first possible legatee might have been referred. There the testator gave his residuary estate in trust to his wife for life, and, after her death, to his children *then* living, to be paid to them as they arrived at the age of twenty-one years, provided that if any of his children who should happen to die in the lifetime of his wife, should have left issue, such issue should take the share to which the parent would have been entitled if living. There were eight children living at the date of the will, seven of whom, with the wife, survived the testator. One child died before him, leaving issue. Here was a gift to a class indeterminate until the death of the widow, and a period after the decease of the testator, to which the contingency of the death of any child might have been referred; yet it was held that the legacy to the issue of the child who died in the lifetime of the testator took effect. It was argued that the issue of a child were not objects of the original gift, but were intended to take by way of substitution for their parent, and consequently that the issue of a child could not take unless there was a possibility of the parents taking; that, as the father of the issue died in the testator's lifetime, he never had any possibility of taking, and therefore his issue was not entitled. This is the argument which has been urged upon us. But the vice-chancellor said that the testator meant, if a child died and left issue, the issue should take, though the child could not, and he ruled that the event which had happened, to wit, death of a child within the testator's lifetime, was within both the general meaning and the words of the will.

The cases of Willing v. Baine, 3 Peere Williams 113, and Le Jeune v. Le Jeune, 2 Keene 701, as we understand them, are to the same effect. The legacies were to a class, and a bequest over in the event of the death of one who would have belonged to the class, had he lived until the time fixed for ascertaining its constituents, was held to take effect though the death happened before the testator's decease. Upon this subject the authorities appear to be almost uniform. Indeed, but one is known to exist, and that is a very old one, which asserts the contrary doctrine. In Gray v. Garman, 2 Hare 268, the question was under a will bequeathing to brothers and sisters as a class, with a direction, that the issue of any of them that should be dead at the time of

[Martha May's Appeal.]

distribution should stand in the place of their respective parents, and it was ruled, that the issue of a brother who had died before the will was made could not take, either by substitution, or as original and substantive legatees. That was not a case like this, but the language of the vice-chancellor, Sir Lancelot Shadwell, in delivering his opinion, is pertinent. He said, "it has been made a question, whether the capacity of the primary legatee (at the date of the will) to take the legacy was alone sufficient; whether such legatee must not survive the testator and become a legatee *in esse,* and not have been a legatee *in posse* only to entitle his issue to claim in substitution. But later cases appear to sanction a more liberal, though still a literal construction of language like that I am considering; and it has been held, that the issue of a person primarily pointed out as the object of a testator's bounty, and being at the date of the will, may take by substitution for that party dying in the lifetime of the testator." The vice-chancellor must be understood as speaking of a case where the "person primarily pointed out," was designated not by name, but by a class, to which he would belong if he continued to live, for such was the case which he had before him, and it has not been doubted, that the legacy by substitution is good when the primary legatee is named. It may be that substitution assumes that the party dying was an object of the gift; but the limitation over to Mrs. Neide may be properly called an alternative one, a gift upon a double contingency, neither of which involves necessarily the existence of any other person who could take.

Upon the whole, then, we think the decree of the court below was in harmony with the decided cases, and that the will of the testator will bear the construction which was put upon it.

The decree is affirmed.