## Fahnestock's Estate.    Wolff's Appeal.

*Wills—Construction of—Gift to classes.*

Testatrix divided her residuary estate into sixteen parts; three parts were given to one class numbering three legatees; eight parts to a class of six, four to another class and one to a class composed of one person. The gift to two of the classes was to those who might be living at the death of the testatrix, and the issue per stirpes of any deceased child. All of the legatees were nephews and nieces. By a subsequent clause in her will testatrix directed that in case of the death of any of the legatees the share of the deceased should go to all her " nephews and nieces then living and the issue of any of them deceased." Two of the legatees died without issue in the lifetime of the testatrix.    *Held,* that their shares should be divided among all the surviving nephews and nieces.

Argued Jan. 26, 1891.    Appeal, No. 202, July T., 1891, by Bernard Wolff, Jr., et al., from decree of O. C. Phila. Co., April T., 1891, No. 130, in estate of Anna Mary Fahnestock, deceased.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The will of the testatrix contained the following provisions :

" *Eighth.*—All the rest residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, I give devise and bequeath to my Executors hereinafter named and the survivor of them their and his heirs, executors, administrators and assigns and to such person or persons as may succeed them or him in the said office.    In trust nevertheless to, for and upon the following uses, trusts, intents and purposes following that is to say to divide the same into sixteenths and as to one full equal fourth part or four-sixteenths thereof to invest the same in safe and secure investments and such investments to change from time to time as may be deemed proper and to pay the net income, interest and dividends thereof to my beloved sister Susannah B. Shea, widow of John Shea, deceased, for and during all the term of her natural life, and from and immediately after her decease then to pay divide and distribute the principal with any accumulation of income of said one-fourth to and among such of her children as may be living at the time of her decease and the issue of any child and children then deceased their heirs executors administrators and assigns in equal parts and shares, such issue of any deceased child to

take only the part or share to which his, her or their parent would have been entitled if living the shares of such children and the issue of any deceased child or children as may be under Twenty-one years to be held by my said Trustees until their respective arrival at the age of Twenty-one years. As to one other sixteenth (1-16) part thereof to hold and invest the same as aforesaid and to pay the net income and dividends therefrom to my niece Susan B. Appel, wife of Reverend Theodore Appel, for and during all the term of her natural life for her own sole and separate use free from her debts past present or future and not subject to anticipation, and from and immediately after her decease them to pay, divide and distribute the principal of said one-sixteenth to and among such of the child, children and issue of the said Susan B. Appel as may be living at the time of her decease and the child, children and issue of any then deceased, their heirs, executors, administrators and assigns in equal parts and shares, such issue of any deceased child or issue to take only the part or share to which his, her or their deceased parent would have been entitled if living. The parts and shares of those under the age of Twenty-one years to be held by my Trustees until their respective arrival at that age. As to eight other sixteenth parts or one full equal half part of my said residuary estate to pay, divide and distribute the same to and among the children of my brother Bernard Wolff, deceased, who may be living at the time of my decease and the child children and issue of any of them deceased their heirs, executors, administrators and assigns in equal parts and shares, the child children and issue of any deceased child of my said brother however to take only the part or share to which his, her or their deceased parent would have been entitled if living, and the respective parts and shares of my nephew John George Wolff and my niece Anna Mary Thomas to be held and retained by my Executors In Trust as hereinafter mentioned. And as to the remaining three-sixteenths of my said residuary estate to pay, divide and distribute the same to and among the children of my brother Christian D. Wolff and my sister Elizabeth Whitmore, deceased, who may be living at the time of my decease, and the child children and issue of any of them then deceased, their heirs, executors administrators and assigns in equal parts and shares such issue of any deceased child or issue to take

only the part or share to which his, her or their deceased parent would have been entitled if living. The shares of all my respective nieces now living Mary E. Vanarsdale, Ellen D. Miller, Emily D. Strothers, Anna M. Girvin and Charlotte S. Crumbaugh shall be held and retained by my Executors In Trust as hereinafter mentioned."

" *Tenth.*—Provided generally and I do hereby expressly declare as to my residuary estate that in case any of my nephews or nieces should die before me or after me and before the final distribution of the respective purparts and shares under the terms and provisions of this my Will without leaving any child, children or issue of any deceased child or children then and in such case the part and share of the one so dying shall be paid, divided and distributed to and among all my nephews and nieces then (at the time of the decease of the one without child or issue) living and the issue of any of them then deceased, their heirs, executors administrators and assigns in equal parts and shares, such issue of any deceased child to take only the part or share to which his her or their deceased parent would have been entitled if living."

Other facts appear in the opinion of the court below.

The auditing judge, FERGUSON, J., held that all the nephews and nieces of the testatrix were entitled to participate in the shares of the deceased one. Bernard Wolff et al. as executors and residuary legatees filed exceptions to the adjudication, all of which were dismissed by the court. ASHMAN, J., filing the following opinion :

" The scheme of distribution of the residuary estate outlined in this will, is so simple that some ingenuity would seem to be required to evolve a substantial doubt as to its meaning. The residuary donees were nephews and nieces, of whom, at the date of the will, there were sixteen. The purparts were also sixteen in number. By the eighth clause, three parts were given to one class, numbering three legatees, eight parts to a class of six, four to another class of six, and one to a class composed of one person as follows : Three parts in trust for testatrix's sister, Susannah B. Shea for life, and to such of her children as should be living at her death, and the issue per stirpes of any deceased child ; eight parts to the children of testatrix's brother, Bernard Wolff, ' who may be living at the time of my decease,' and the issue

per stirpes of any deceased child; four parts to the children of testatrix's brother, Christian D. Wolff, and her sister, Elizabeth Whitmore, 'who may be living at the time of my decease,' and the issue per stirpes of any deceased child; and one part to testatrix's niece, Susan B. Appel, for life, and such of her children as should be living at her death, etc. The death of a member of any of these classes without issue in the lifetime of the testatrix would swell the interests of the remaining members of that class. If, for instance, five of the children of Bernard Wolff had so died, the surviving child would take one half of the entire estate. Apparently, to obviate this result, and to maintain an even ratio of division, the testatrix in the tenth clause, went on to provide, that in case of any such death in her lifetime, or afterwards and before the period of distribution, the share of the deceased child should go to 'all my nephews and nieces then living and the issue of any of them deceased.' Christian H. Wolff, a child of Bernard Wolff, and Anna M. Girvin, a child of Elizabeth Whitmore, died without issue in testatrix's lifetime, and their shares were awarded by the auditing judge to all of the surviving nephews and nieces. This was the whole case. The tenth clause was simply an exemplification of the eighth, and if the two had not been separated by an intervening paragraph, the present question would never have been heard of.

" It was objected, however, that the gift to the children and issue of Christian D. Wolff and of Elizabeth Whitmore was a gift to a class, which comprehended the children and other issue of those parties who were living at the death of the testatrix; that the class was ascertained and fixed at the time of the death; and that a child who died before that event could by no possibility be included in its membership. Of course, if a child was not a member, it could have no part in the class gift; and it was thence argued that in her gift in the succeeding clause of 'the part and share of the one so dying,' the testatrix could not have referred to persons who, by dying before the testatrix, never had a share which could be the subject of a substitutionary gift. To put the argument in another shape : The gift was an absolute gift of four-sixteenths to those children only of Christian and Elizabeth who should be living at testatrix's death ; a provision which should recognize a child who died

before the testatrix as a sharer in the legacy would be repugnant; and to avoid such repugnancy, the testatrix in her gift over to all of her nephews and nieces, must be held to have intended only those nephews and nieces who were members of the class of which the deceased relatives would have been constituents if they had lived. The whole force of this proposition is stored up in the word repugnant. Things are repugnant to each other which are not only conflicting, but irreconcilable. It has never been held, however, that a subsequent provision, which diminishes a preceding gift, as by cutting down to a life estate a prior devise in fee, is so far conflicting and irreconcilable with that gift as to be, in the legal sense, repugnant to it; and emphatically never, when the effect of the later gift is to enlarge the former. The testatrix did both; by virtue of the tenth clause of her will she directed that each class of her beneficiaries should be liable to contribute to the common fund a share or shares, which by the eighth clause would have been absorbed by its own constituents; but she also provided that every class should participate in that fund; so that what she took with one hand she, in part at least, restored with the other.

"It is misleading to speak of the tenth clause as separate from the preceding 'clauses, when it is expressly connected with them by the word *provided*. In point of fact, the eighth, ninth and tenth clauses form a single section, relating to a single subject, and mapping out a connected scheme. There is, first, the gift to the trustees, with the quantum of the several shares; then the imposition of spendthrift and separate use trusts upon certain of those shares; and, finally, a disposition of the shares of those who should die without issue before the period of distribution. This last provision for the event of the death of a childless legatee was a natural supplement to the prior settlement of the share of a deceased legatee leaving children. The supplement by its terms referred to parties who were actually alive at the date of the will, and who were therefore prospective legatees, entitled to prospective shares. What was to prevent the testatrix from using these prospective interests, which were as real as any others when the will was written, as units of distribution among the surviving beneficiaries. This was all that the testatrix intended when she spoke of the

shares of the nephews or nieces who should die before her. She
knew that their death would exclude them from the class to
which she had assigned them; and she now declared that the
lapsed interests should not go to enrich that class, but should be
divided among all the classes. There is nothing new in this
method of testamentary disposal, and nothing original to the
objection. The shares of parties dying who, by reason of their
death, never had any shares, are often apportioned among the
survivors. The case of Martha May's Appeal, 5 Wr. 522, and
the authorities upon which it rested, are in point, and the lan-
guage of STRONG, J., is peculiarly so: 'Even when a legacy
is given to a class, and in the event of the death of one who
would have been a constituent of the class, before a defined
period, his share over to another, that other will take though
the first legatee die in the lifetime of the testator. In other
words, the alternative gift will be supported if the first legatee
be one who would have taken had he lived to the period of
distribution.' This is a direct decision that a substitutionary
gift may be valid, although it purports to be of the share of a
person who never became a member of the class comprising
the objects of the original gift, and who therefore was never
himself a legatee, nor entitled to a share which could go over to
another. It refutes the objection that the testatrix, in her gift
of ' the part and share of the one so dying,' could not have
referred to Christian H. Wolff or Anna H. Girvin, because
neither of those parties ever had a share in her estate; and it
affirms the theory that she used the phrase as one descriptive
of the alternative gift.

"We are not able to say that the auditing judge erred in
finding that the testatrix meant to include among the nephews
and nieces who should take the share of one dying in her life-
time the two nephews whose legacies of $2,000 she had declared
were to be ' in full of all interest and distributive share ' in
her estate. The latter provision may, with some plausibility,
be said to be repugnant to the earlier, and embodying as it
does the latest purpose of the testatrix, should therefore pre-
vail. The question is a close one, but the decision reached in
the adjudication follows the statute of distribution by giving
to all of the next of kin, and in that way complies with a set-
tled rule of interpretation. The exceptions are dismissed."

1892.]        Assignments of Error—Statement of Facts.

*Error assigned* was the dismissal of exceptions.

*John G. Johnson, Jerome Carty* with him, for appellants.

*George C. Wilson* and *S. E. Megargee*, with them *John W. Apple* and *William L. Nevin*, for appellees.

PER CURIAM, February 1, 1892.

We affirm this decree upon the opinion of the learned judge of the court below, and dismiss the appeal at the costs of the appellants.