## Mifflin's Estate.

*Wills—Construction—Legacies—Provisions to avoid lapse.*

Testatrix devised the residue of her estate, real and personal, to such of her four nephews, A, B, C and D, as might be living at the time of her death, and the descendants, then living, of any of them who might be deceased *per stirpes*. A, B and C were brothers; D their first cousin. She further provided that A's share should be held in trust during his natural life, and that upon his death the trustees should assign the principal of his share to such of his brothers as might be living, and the descendants, then living, of such as might be dead, in equal shares *per stirpes*. A died without issue before testatrix: *Held*, that the fund passed to B and C, to the exclusion of D.

LAMORELLE, P. J., dissents.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1922, No. 189.

The auditing judge, Gest, J., said in his readjudication, after quoting the extract from the will containing the opinion of the court:

"Of these four nephews, Danforth Phipps Wight, Edward P. Wight and George Richards Wight were brothers, and Barrington Wight is their first cousin. Danforth P. Wight predeceased the testatrix, intestate and without issue. His brothers living at his decease and at the decease of the testatrix were Edward P. Wight and George Richards Wight. The auditing judge held that his death accelerated the remainder, and, consequently, distributed the residuary estate, as above stated, to Barrington Wight, one-fourth; to Edward P. Wight and G. R. Wight, each three-eighths.

"Mr. Farr argued that this distribution was erroneous, and that the residuary estate should have been awarded in equal third parts to the three surviv-
3 D. & C.

ing nephews, as the gift was to such of the four nephews as might be living at the time of the death of the testatrix, and as Danforth was not then living, the contingency did not happen and there is nothing upon which the trust, in case he survived, could take effect. In support of this argument several cases were cited on the subject of vested and contingent legacies, but, in my opinion, they have no application. The question is not whether the legacy "vested" in Danforth or not, for no legacy can vest until the death of the testator. Every legacy, in other words, is given on the implied condition that the legatee survives. See Penrose, J., in Cooper's Estate, 13 Dist. R. 127. If the legatee dies before the will goes into effect, the legacy lapses unless it is preserved from lapse by the terms of the will or by statute. Here the testatrix is careful to provide against lapse with regard to Edward, George and Barrington, by substituting the descendants of any deceased nephew, a precaution which seems perhaps unnecessary in view of 1-15 *(b)* of the Wills Act of 1917; but in the case of Danforth, who had no issue, she provided for a remainder to his brothers. I have no doubt the gift over took effect notwithstanding his death. See May's Appeal, 41 Pa. 512; Fahnestock's Estate, 147 Pa. 327; Bruner's Estate, 14 Dist. R. 124; Crawford's Estate, 18 Dist. R. 594; Janney's Estate, 28 Dist. R. 24. The schedule of distribution filed reserves the one-fourth share in controversy, and as the auditing judge adheres to his previous adjudication and construction of the will, and the principal assets reserved carried at $15,454.66, and income thereon carried at $1178.84, are now awarded to Edward P. Wight and George R. Wight in equal shares."

*Chester N. Farr, Jr.,* for exceptions; *Caspar W. B. Townsend,* contra.

GUMMEY, J., July 10, 1923.—The question raised by the exceptions arises over the share of Danforth Phipps Wight, who was a brother of Edward P. Wight and George Richards Wight, the remaining beneficiary, Barrington Wight, being a cousin; and the clause of the will which gives rise to the discussion is as follows: "Sixteenth. All the rest, residue and remainder of my estate, whether real or personal, I give, devise and bequeath to such of my four nephews, Danforth Phipps Wight, Edward P. Wight, George Richards Wight and Barrington Wight, as may be living at the time of my death, and the descendants then living of any of them that may be then deceased, *per stirpes,* upon the principle of representation, to have and to hold the same to them, their heirs and assigns forever, as tenants in common and not as joint tenants; the share of Danforth Phipps Wight to be held by my Executors and Trustees, In Trust, to invest the same in good and safe securities, not confining my Trustees and Executors to what are known as Legal Investments, and to pay the income therefrom in equal quarterly instalments unto my said nephew, Danforth Phipps Wight, for and during the term of his natural life, In further trust, upon his death to pay, assign, transfer and set over the principal of his said share unto such of his brothers as may be living and the descendants then living of such of his brothers as may then be dead, in equal shares, *per stirpes,* upon the principle of representation."

Danforth Phipps Wight died on Aug. 25, 1920, during the lifetime of the testatrix; indeed, he died prior to the execution of her will, which is dated March 31, 1921, and the auditing judge held that his distributive share passed to his two brothers, Edward and George, to the exclusion of Barrington, on whose behalf it was argued that the residuary estate should have been awarded in equal third parts to the three surviving nephews, as the gift was to such of the four nephews as might be living at the time of the death of the

testatrix; and, as Danforth was not then living, the contingency did not happen and there was nothing upon which the trust in case he survived could take effect.

A majority of the court agree with the construction placed upon the will by the auditing judge. The testatrix divided her residuary estate among her four nephews, substituting the descendants of any one of the nephews who should not be living at the time of her death, and then, as Danforth had no issue, desiring to make a separate provision as to his distributive share, she bequeathed it in trust to pay the income to him for life, with remainder to his brothers. As pointed out by the auditing judge, the question is not whether the legacy vested in Danforth, as no legacy can vest until the death of the testatrix (see Cooper's Estate, 13 Dist. R. 127), and in order to provide against a lapse in the event of a beneficiary dying in her lifetime, the testatrix was careful as to the shares of Edward and George and Barrington to substitute their respective descendants; but in the case of Danforth, who had no issue, she gave the remainder interest to his brothers. See May's Appeal, 41 Pa. 512; Fahnestock's Estate, 147 Pa. 327; Bruner's Estate, 14 Dist. R. 124; Crawford's Estate, 18 Dist. R. 594; Janney's Estate, 28 Dist. R. 24.

The exceptions are dismissed.

LAMORELLE, P. J., dissenting.—The gift here was not to four nephews by name, but to *such of four* named nephews as should be living at the time of the death of testatrix.

There was a substitutionary gift to the descendants of any that might then be deceased. There was no substitutionary gift of the share of Danforth Phipps Wight; there was, however, a provision that his share should be held in trust, with limitation over upon his death.

He, however, died in the lifetime of the testatrix; therefore, he never had nor could he have any share, in that his death eliminated him from the category "such of my four nephews." As his share never existed, those who succeed upon his decease to his share necessarily take nothing. As to the three nephews, there was a substitution in event of their death in the lifetime of testatrix; as to Danforth, there was no substitution whatever in event that he died in his aunt's lifetime, and therein lies the whole pith of the case; his death and their life reduced the group to three.

To construe the will, as did the auditing judge, and in the way approved in the majority opinion, the phrasing should be "to my three nephews (naming them), and to my executors, in trust, for my remaining nephew (naming him) and, in event that any of the four predecease me, then, as to three of them their descendants are to take, and as to the one for whom the trust is created, his share is to be paid to his two brothers." This testatrix does not say, nor can her intention to thus dispose of her estate be found in the will, save in a paraphrase, which, to my mind, distorts the meaning of its language. There can be no acceleration by death, unless there is something to accelerate; here, because of the non-existence of Danforth Phipps Wight when the will became effective, those who answer the description or designation of "such of my four nephews" were the three named living nephews, his two brothers and one cousin, and, as I interpret the will, they are each entitled to one-third of the residuary estate.

In the recent case of Long's Estate, 270 Pa. 480, it is said by the present Chief Justice (at page 487): "When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no

avail. Neither precedents nor rules of construction can override the testator's expressed intent (Redding v. Rice, 171 Pa. 301, 306); and this, in the present case, the court below correctly found from the will."

But even if I found myself bound by the authorities, none of those referred to in the brief submitted in support of the adjudication, nor any that I have found, seem to me to be in point. I have no dispute with the cases which hold that a substitutionary gift is effective in event of death of the first taker, nor with the proposition that a remainder dependent upon a life estate is good, although the life estate failed because of the prior decease of the life-tenant. Such cases, however, are without application here, for, in the instant case, testatrix did not give to four nephews at all, but to such of the four as should be living at the time of her death, and there were but three who could bring themselves within the selective group, and because of this fact, they take all.

Examining the cases quoted, what do we discover? In May's Appeal, 41 Pa. 512 (on which great reliance is placed), the gift was to grandchildren, and in event of their death, their share was to be paid to their mother. A grandchild predeceased testator, and it was held, and properly so, that the mother took the alternative gift. So, in Bruner's Estate, 14 Dist. R. 124, the death of the first taker, to whom a gift was made, with remainder over, was held to be immaterial, and its only effect was said to accelerate the remainder so given. And again, in Crawford's Estate, 18 Dist. R. 594, the gift over was held to be in the alternative.

In short, in all of these cases—those analyzed as above, as well as Janney's Estate, 28 Dist. R. 24; Roberts's Estate, 2 D. & C. 347; Fahnestock's Estate, 147 Pa. 327—there was no lapse because there was a provision in the will that in case of death the share was to pass in the alternative to a person or a class; while here, when testatrix died, there were, as stated before, three living persons who brought themselves within her designation of "such of my four nephews as may be living at the time of my death," thus excluding from participation the one then dead: the effect of his death was obliteration, not succession.

And for these reasons I would sustain the exceptions.