# Fitzgibbon's Estate.

*Wills—Construction—Agreement of legatees as to construction of will—Widow's election—Estoppel—Married women—Control of personal property—Husband and wife—Act of June 8, 1893, P. L. 344.*

1. Where a testator, leaving to survive him a widow and three daughters, directs that his estate shall be kept intact at least for ten years, unless his wife should remarry, in which event the estate should be settled, and further directs that any moneys given to his daughters or set aside for them should not be charged up against them in settling the estate, this to be in place of insurance, which amounts "they shall share and share alike in case of either one of the three daughters demise then her share shall revert to the other two and so on to the last one left living of the three," the survivorship relates to the expiration of the period of ten years

and refers to the residuary estate, and not to the insurance fund, which testator did not intend to form a part of his estate.

2. If, in such case, the words relative to the death of the daughters be applied to the insurance money, no provision is made in the will for either the division of the estate, or its vesting; and the testator must be held to have died intestate as to all the rest of his property, constituting the larger part of his possessions. A construction of the will which favors intestacy is to be avoided, if possible.

3. The widow's election to take against the will, with full knowledge of the distribution of the insurance fund among her daughters, estops her from making any claim to that fund.

4. Where the three daughters, one of whom is married, executed an agreement, without the joinder of the married one's husband, that all of the estate of their father, with the exception of the insurance funds, already distributed, should remain intact, for the period of ten years from testator's death, the daughters to receive the income therefrom and to "hold the estate as tenants in common with the right of survivorship," the husband of the married daughter, after the death of his wife, can claim no interest in the personal estate through his wife.

5. Under the Act of June 8, 1893, P. L. 344, the married daughter had the full right to dispose of her personal property without her husband's consent or joinder.

Argued October 18, 1921. Appeals, Nos. 140, 141, 142 and 163, Oct. T., 1921, by Gertrude G. Fitzgibbon, Eleanor Fitzgibbon and Margaret V. Fitzgibbon, from decree of O. C. Allegheny Co., April T., 1920, No. 126, dismissing exceptions to adjudication, in estate of William Fitzgibbon, deceased. Before Frazer, Walling, Simpson, Kephart and Schaffer, JJ. Affirmed as to No. 140. Reversed as to Nos. 141, 142 and 163.

Exceptions to adjudication. Before Miller, P. J.

William Fitzgibbon died on September 12, 1916, leaving to survive him Gertrude Fitzgibbon, his wife, and three daughters, Eleanor Fitzgibbon, Frances F. Grote, wife of Ludwig I. Grote and Margaret V. Fitzgibbon. Mrs. Grote died on April 26, 1919, leaving her husband to survive her.

The will of William Fitzgibbon and agreement known in the case as Exhibit H are as follows:

I. William Fitzgibbon of Carnegie Pennsylvania doe Make and Publish this my last will and testament, herby revoking and make void anny former will by me at anny time here tofore made

First. that my Just debts and funeril expenses Shall be fully Paid and satisfied, by my Execters as soon as may be after my decease

Second. My Estate shall be kept in Tact at least for ten years unless My wife Should get married agan In that Event the Estate shall be Setteled up and Devided but anny moneys Given to My Daughters or Set aside For them and its Earnings shall not be Charged up against them in Settelling my estate this is to be in place of Insurance whitch I should of carried for them. and whitch my Personal Book will show the amounts and places deposited in whitch amounts They Shal share and Share alike in Case of Either one of The Three Daughters Demise then her share Shal revert to the other two and sow on to the last one left living of the Three.

Third. I apoint my Thre Daughers Elliner Fitzgibbon Francis Fitzgibbon Mrs. L. I. Grotty and Margaret Fitzgibbon as my Exectors my Desire is they should not give any bonds but that at all times my Exectors shall Consult My Brother M. H. Fitzgibbon of Carnegie in regards to all Properties whitch he is intrested in and act according to his Judgment in the Same  I set my hand and seal The 10 Day of April, 1916.

William Fitzgibbon.

### EXHIBIT H.

This Agreement made this 23rd day of March A. D. 1917, among Eleanor Fitzgibbon, Margaret V. Fitzgibbon and Francis Fitzgibbon Grote:

Whereas, it was the intention of our father, upon his death, to leave his estate to us to be and remain intact

for a period of. ten (10) years after his death, and at the end of said period to go to the **survivors or** survivor of us who are his only heirs at law:

Now Therefore this Agreement **Witnesseth:** That we do hereby mutually agree and declare that all of the estate of our said father, with the exception of the insurance funds, which we have already divided and disposed of, shall remain intact for the period of ten (10) years, from the date of our father's death. That we shall receive the income therefrom and that we take and hold said estate as tenants in common with right of survivorship.

Witness our hands and seals this 23d day of March, A. D. 1917.

(Signed)  Francis Fitzgibbon Grote  (Seal)
(Signed)  Eleanor Fitzgibbon          (Seal)
(Signed)  Margaret V. Fitzgibbon     (Seal)

Other facts appear by the opinion of the Supreme Court.

Exceptions to the adjudication were dismissed. TRIMBLE, J., dissented. Gertrude G. Fitzgibbon, testator's wife, appealed in No. 140.

Eleanor Fitzgibbon appealed in No. 141.

Margaret V. Fitzgibbon appealed in No. 142 and Eleanor and Margaret V. Fitzgibbon appealed in No. 163.

*Errors assigned,* inter alia, were decrees dismissing exceptions to adjudication.

*Allan D̦avis,* of *Duff, Marshall & Davis,* for appellants.—The daughters had the right to make the agreement: McCoy v. Niblick, 228 Pa. 342; Windolph v. Trust Co., 245 Pa. 349.

If, for any reason, the agreement should be held invalid, even then Grote had no standing, because the will vests the general estate in the survivor, and Mrs. Grote is dead.

The presumption in the law is that testator intended to dispose of his entire estate and not to die intestate: Phillips's Est., 205 Pa. 504; Lloyd's Est., 188 Pa. 451; Ferry's App., 102 Pa. 207; Long v. Hill, 29 Pa. Superior Ct. 606.

The will refers to any daughter's demise and not to her demise or death without issue or without children. In case of the death of one, her share shall go to the other two; and in case of the death of the second, to the last one left living of the three. The estate created by these words could not possibly last longer than the lives of any of the two daughters who should die leaving one to survive them: Buchanan's App., 72 Pa. 448; Irwin v. Covodo, 24 Pa. 162; Ballenger's Est., 19 Pa. Superior Ct. 199; McKeever v. Patteson, 2 Pa. C. C. R. 304; Rowland's Est., 141 Pa. 553; Black v. Woods, 213 Pa. 583.

Where the gift to the survivors is preceded by a particular estate for life or years, words of survivorship, in the absence of anything indicating a contrary intention, shall refer to the termination of the life estate: Woelpper's App., 126 Pa. 562; Breese's Est., 32 W. N. C. 166; Patrick's Est., 162 Pa. 175.

*James T. Buchanan,* with him *Hermann L. Grote* and *Frederick C. Grote,* for appellee.—The general rule is that the words "survivor" or "surviving," following a prior gift, are understood as referring to the death of testator, unless a contrary intention is apparent: Fetrow's Est., 259 Pa. 89; Worst v. De Haven, 262 Pa. 39; Marshall's Est., 262 Pa. 145; Stark's Est., 264 Pa. 232; Jennings's Est., 266 Pa. 60; Frisbie's Est., 266 Pa. 574; Groninger's Est., 268 Pa. 184.

Testator did not die intestate as to any part of his estate, but it all passes under his will: Long's Est., 228 Pa. 594; Reisher's Est., 261 Pa. 223.

The marital rights of a husband in his wife's estate stand upon a higher plane than that of any other heir

to her estate. His wife cannot deprive him of these rights without his consent: Thornton v. Kreeps, 37 Pa. 391.

The agreement is not a valid transfer and assignment of Mrs. Grote's interest, sufficient to divest her vested interest: Benkhart v. Com. Tr. Co., 269 Pa. 257; Windolph v. Trust Co., 245 Pa. 349.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1922:

These appeals are from a decree of distribution in the estate of William Fitzgibbon; much testimony was taken on the hearings, but, as we view the vital questions at issue, almost all of it is without any bearing on them, and can be disregarded, because what is involved is the construction of two papers, the will of William Fitzgibbon, and an agreement executed after his death by his three children. These papers speak their own meaning, without extraneous aid, except in one particular, to which we will advert hereafter.

Testator, as his will, which he wrote himself, discloses, was deficient in education; he had accumulated a considerable fortune; his family consisted of his wife, Gertrude, who elected to take against the will, and three daughters, Eleanor, Margaret and Frances, the latter prior to her father's death having married Ludwig I. Grote. These three daughters were the objects of testator's bounty, to them he intended to give all he possessed; no other person is mentioned in the will as being entitled to take anything thereunder, not even his wife.

The first direction was "My estate shall be kept intact at least for ten years unless my wife should get married again in that event the estate shall be settled up and divided." His wife still remains his widow. He named his three daughters as executrixes; his evident purpose was that his entire estate should remain intact in their hands for at least the period indicated. His second direction was expressed thus, "but any moneys given to my daughters or set aside for them and its earnings

shall not be charged up against them [as part of his estate] in settling my estate this is to be in place of insurance which I should of [have] carried for them and which my personal book will show the amounts and places deposited in which amounts *they shall share and share alike."* Testimony showed that testator had on deposit in four banks sums in excess of $175,000 and that in the book,—designated by the will and by him in his lifetime as his personal book, and in which these deposit accounts appeared,—there was written, over each account, in the handwriting of the testator, the words "custodian for Ellener & Francis and Margaret Fitzgibbon." The orphans' court properly held the money in these accounts constituted a fund, accumulated by the father, which was to take the place of life insurance for his three daughters and which was not considered by him part of his estate, that it need not be accounted for as part thereof, there being no debts to be taken care of, and especially so, as this money had been distributed and paid out by the managing and accounting executor, the daughter, Eleanor, to herself, and her two sisters as insurance, with the full acquiescence of the mother.

As to the so-called insurance money, the majority of the orphans' court held that the language of the will which follows mention of it, "in case of either one of the three daughters demise than her share shall revert to the other two and so on to the last one left living of the three," refers to that particular fund; the minority of the court did not so hold nor can we. These words refer, not to the insurance money (which in the testator's mind was no part of his estate, and which was to be divided among his daughters share and share alike), but to his "estate" which he had directed should be "kept intact for at least ten years." To link up the words "in case of either one of the three daughters demise then her share shall revert to the other two and so on to the last one left living of the three," with the pro-

vision for keeping his estate intact for at least ten years, works out a harmonious scheme for his entire will, which cannot be done if the language in question is tied to the insurance money provision. He contemplated that his daughters were to immediately receive this money, "and moneys given to my daughters or set aside for them......shall not be charged up against them in settling my estate." He thought of it and spoke of it as insurance, which would be presently payable to them at his death, and directed that in it "they should share and share alike." The subsequent words, creating a survivorship right in the last living daughter, could not apply to this so-called insurance money presently given, not to be charged against them because received, and to be shared equally, without doing violence to his whole insurance plan, whereas, if applied to his property other than the insurance fund, they fit into his scheme of keeping his estate intact for ten years, most aptly and logically.

If the words relative to the death of the daughters be applied to the insurance money, no provision is made in the will for either the division of the estate or its vesting; and the testator must be held to have died intestate as to all the rest of his property, constituting far the larger part of his possessions. That construction of a will is favored which avoids an intestacy: Phillips's Est. (No. 1), 205 Pa. 504.

We therefore conclude that the insurance money belongs to the three daughters, that it was not impressed with any survivorship rights as between them; and the widow, who elected to take against the will, having acquiesced in its distribution to her children with full knowledge, has no claim to it.

One other matter involved in the construction of the will must be passed on before we come to the second paper in the case. It is argued that the provision in the will, relative to the death of the daughters, relates to their death in the lifetime of the testator. It cannot be so

read and carry out the testator's intent; his first thought was to preserve his estate intact for ten years, and he is speaking of this period,—the provision as to the insurance money having been interpolated parenthetically into his main thought,—when he provides "in case of either one of the three daughters demise then her share shall revert to the other two and so on to the last one left living of the three." His idea of ultimate disposition, was to the daughter or daughters living at the end of the ten-year period, provided his wife did not marry again.

We now come to the second, and in our view, so far as the pending controversy is concerned, controlling document in the case; about six months after the death of testator, the three daughters entered into this agreement. Margaret, the youngest, was not of age when she signed it; she, however, acknowledged and reaffirmed the writing after her majority. Neither the widow nor Ludwig I. Grote, husband of the daughter Frances, were parties to the agreement, but the former was fully informed of it, and approved it; the latter, although present in the room when the writing was signed, may not have known its contents.

This agreement, after reciting that it was the intention of their father to leave his estate to them, to remain intact for a period of ten years after his death, and, at the end of that period, to go to the survivor or survivors of the three daughters, provides, "We do hereby mutually agree and declare that all of the estate of our said father, with the exception of the insurance funds, which we have already divided and disposed of, shall remain intact for the period of ten years, from the date of our father's death. That we shall receive the income therefrom, and that we take and hold said estate as tenants in common with the right of survivorship."

This was an agreement which the parties to it, including the married daughter, Mrs. Grote, had the right and power to enter into. Under our construction of the

will, the entire estate passed to them, subject to the widow's interest therein, resulting from her election to take against the will. The pending proceeding relates only to the distribution of personalty. Under the Married Woman's Property Act of June 8, 1893, P. L. 344, 3 Purd. Dig. 2449, the married daughter had the right to dispose of her personal estate, without the joinder of her husband, as absolutely as he could exercise dominion over his estate, except as the act limits her right to become accommodation endorser, maker, guarantor or surety for another. In the absence of fraud practiced upon her husband (and there is no allegation of fraud here), Frances Grote could dispose of her personal estate without his consent or joinder. "A wife has the same power of disposal of her personal estate during coverture that her husband has to his personal property, and she can create a valid trust of her separate personal estate without the joinder or consent of her husband......Our legislation has changed her status as to her separate property and she now has the same right and power as an unmarried person to acquire, own, control, sell or otherwise dispose of her property, and may exercise the right and power in the same manner and to the same extent as an unmarried person......With these exceptions [that she may not become an accommodation endorser, etc.] a married woman occupies the same relation to her property as an unmarried person, or as her husband to his property. In other words, saving the disabilities specified in the statute, her control over, and power of disposal of, her separate estate, are the same as if she was a feme sole. She may therefore dispose of her personal estate during coverture as she pleases. Her husband has no vested interest in her personal property during her lifetime. If done in good faith, and with the intention to divest herself of the ownership, she may sell her personal property, give it away, or make any other disposition of it she desires during her life, and he cannot complain, for

the all-sufficient reason that he has no interest in the property. She is the owner and has absolute control over it, and hence in disposing of it during life she infringes no property or other right of her husband": Windolph v. Girard Trust Co., 245 Pa. 349, 364.

By this agreement, translating into acts their understanding of their father's will, these three persons have fixed the terms under which they will hold the property which came to them from him. At present we are concerned only with the income from it, the ten-year period fixed by the will and agreement not having expired.

The construction of the majority of the orphans' court was that the clause of the will covering the contingency of the death of the daughters relates to the insurance money and not the estate, that as to the latter there is an intestacy, that the agreement was ineffective so far as it deprived Ludwig I. Grote of the interest which he would take as surviving spouse of Frances Grote; and distribution was directed to be made to her estate, of which he is executor, of the share she would take under the intestate law. As we have pointed out, we do not agree with this construction of the will nor with the effect given to the agreement. After the execution of the agreement by his wife, Ludwig I. Grote had no interest in the estate which she derived from her father, save, of course, that he would have to join her in the execution of deeds for real estate, which he did. As the result of the award to the estate of Frances Grote, exceptions were filed by the widow, Gertrude G. Fitzgibbons, the purpose of which was to assert her right to claim her share of the insurance money which has been distributed. The orphans' court found that she had estopped herself from claiming any part of this money. In this finding, we concur, and her appeal, No. 140, October Term, 1921, is dismissed. Likewise, following the award, Eleanor Fitzgibbon, Margaret V. Fitzgibbon, and Eleanor Fitzgibbon and Margaret V. Fitzgibbon jointly, appealed from the decree, contending that Ludwig I. Grote has no standing to

make any claim through his wife on their father's estate. On these appeals, Nos. 141, 142 and 163, October Term, 1921, for the reasons heretofore given, the decree of distribution entered by the court below is reversed, with directions to the court to make distribution to the widow, Gertrude G. Fitzgibbon, in accordance with her election to take against the will, and to Eleanor Fitzgibbon and Margaret V. Fitzgibbon of the income in accordance with the terms of the agreement marked Exhibit H, the distribution of the balance of the corpus of the estate, after deducting the widow's share, to abide such time as under the terms of the agreement make its distribution proper, the costs to be paid out of the estate.