Elkins' Estate.

Argued January 15, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*C. Brewster Rhoads*, with him *Edward G. Taulane, Jr.*, and *John F. Headly*, of *Montgomery & McCracken, Harry F. Hauser* and *Joseph H. Cochran*, for appellants.

*George Wharton Pepper*, with him *John H. Longaker, William Carson Bodine, Thomas Stokes* and *Charles Townley Larzelere*, for appellees.

*Boyd Lee Spahr*, of *Ballard, Spahr, Andrews & Ingersoll*, for accountants, appellees.

*Harry F. Hauser*, in propria persona, guardian ad litem.

OPINION BY MR. JUSTICE BARNES, March 27, 1940:

The question presented by this appeal involves the construction of the will of William L. Elkins, with certain of its codicils,[1] for the purpose of determining the proper distribution of the income from his residuary estate among the children of his son, George W. Elkins, and of his daughter, Eleanor Elkins Rice. It appears from the record that the decision here will also be determinative of the ultimate distribution to be made of the principal of the estate.

The testator executed his will on July 11, 1892, and at that time he had four living children, William L. Elkins, Jr., Ida Elkins Tyler, George W. Elkins and Eleanor Elkins.[2] William predeceased his father, and thereafter a codicil was added to the will making separate provision for his children and their descendants. In conse-

---

[1] There are five codicils to the will, dated respectively May 9, 1900; October 15, 1902; May 4, 1903; October 12, 1903; October, 1903. The Third and Fifth Codicils have no bearing upon the question raised by this appeal.

[2] (a) William L. Elkins, Jr., testator's son, died March 13, 1902, survived by two children. The testator made separate provision in the Second Codicil for these two grandchildren and their de-

quence, they are not interested in the present question affecting the residuary estate.

The testator died on November 7, 1903, survived by his wife, Louise B. Elkins, and three children, Ida, George and Eleanor, who became beneficiaries of the trust of his residuary estate. His daughter Ida died on May 16, 1904, leaving no issue. Subject to the payment of an annuity of $100,000 to the widow, the balance of income was equally divided between testator's surviving children, George and Eleanor, and following the death of the widow on June 6, 1910, these two children shared the entire income of the estate. George W. Elkins died on October 23, 1919, leaving four children, of full age, who are here the appellants. With their written consent, the payment to Eleanor Elkins Rice of one-half the income was continued until her death on July 13, 1937. She was survived by two children, of full age, who are here the appellees.

Upon the audit of the trustee's sixth account, which was filed on October 1, 1937, the children of George W. Elkins claimed that they were entitled, under the terms of the Fourth Codicil, to an award of two-thirds of the income of the trust, with the result that the children of Eleanor Elkins Rice would receive only one-third of the

---

scendants, and expressly excluded them from further participation in his residuary estate.

(b) William L. Elkins, the testator, died November 7, 1903, survived by his widow and three children—Ida Elkins Tyler, George W. Elkins, and Eleanor Elkins Widener.

(c) Ida Elkins Tyler, testator's daughter, died May 16, 1904, without issue.

(d) Louise B. Elkins, testator's widow, and annuitant under the will, died June 6, 1910.

(e) George W. Elkins, testator's son, died October 23, 1919, survived by four children, William M. Elkins, George W. Elkins, Jr., Stella F. Tyler, and Louise E. Sinkler, the present appellants.

(f) Eleanor Elkins Widener Rice, testator's daughter, died July 13, 1937, survived by two children, George D. Widener and Eleanor Widener Dixon, the present appellees.

income. The latter resisted this claim, and asserted that there should be awarded to them one-half the income, because the provisions of the Fourth Codicil relied upon were inoperative.

The auditing judge sustained the contention of the children of Eleanor Elkins Rice, whereupon the children of George W. Elkins, with the guardian ad litem for their minor children,[3] filed exceptions to the adjudication. They have appealed to this Court from the dismissal of those exceptions by the court in banc, and the approval of a schedule of distribution which provides for the payment of one-half of the income to the children of Eleanor Elkins Rice.

It is necessary to consider now those portions of the testator's will and its codicils which are pertinent to the question before us. The ninth paragraph of the will gives the residuary estate to trustees upon the following trusts:

"IN TRUST, during the lifetime of my wife, to pay over to her in equal monthly instalments, . . . the annual sum of One Hundred Thousand Dollars, and to divide the remaining income, monthly, into as many parts or shares as, at each of said times of monthly distribution, there shall be children of mine then alive, and children of mine then dead, represented by descendants then living [who are to take 'per stirpe,' upon the principle of representation] and to pay over to each child and descendant who, at any of said times shall be found entitled, its share."

.    .    .    .    .    .    .    .    .    .    .

"IN TRUST, as to the principal of my residuary estate . . . *at the decease of my wife, to divide the same into as many parts or shares as, at that time, there shall be children of mine then alive, and chil-*

---

[3] Harry F. Hauser, Esq., was appointed guardian ad litem for the minor living descendants, and trustee ad litem for possible unborn descendants of George W. Elkins. John H. Longaker, Esq., was appointed in like capacities for descendants of Eleanor Elkins Rice.

dren of mine then dead, *represented by descendants
then alive,* and to subdivide the share falling to each
set of descendants of a child of mine then dead,
amongst them 'per stirpe,' upon the principle of rep-
resentation.

"IN TRUST, as to the share which shall then fall
to any son of mine then alive, to divide the same into
two equal parts or shares. To pay over to such son,
in fee simple, one of such half parts and to hold the
other half part upon the trusts hereinafter declared.

"IN TRUST, as to the share which, at such time,
shall fall to each daughter of mine then alive, to hold
the whole thereof, upon the trusts hereinafter de-
clared."

.  .  .  .  .  .  .  .  .  .  .

"During the lifetime of a child, to pay over the
net income of his or her share, monthly to him or to
her . . . Upon its decease, to divide the principal
of its share, into as many sub-parts or sub-shares, as
there shall be children of it then alive and children
of it then dead, represented by descendants then alive
[such children and descendants to take 'per stirpe'
upon the principle of representation] . . ."

"IN TRUST, . . . in case there shall be no de-
scendant of a *life tenant* alive at his or her decease,
to divide the principal of the share into as many sub-
parts or sub-shares, as, at the time of the decease of
*such life tenant,* there shall be children of mine then
alive, and children of mine then dead, represented by
descendants then living [who are to take 'per stirpe'
upon the principle of representation] . . ."

The testator finally directed that the corpus should be
held in trust for the period permitted by the rule against
perpetuities, and at the expiration of such time, that
distribution should be made to the ultimate remainder-
men under the terms of the will.

In the First Codicil the testator altered the provisions
of his will concerning the disposition of his country
home and its contents, and directed that upon the death
of his widow, his daughter Ida should enjoy them for
life, with the power of appointment to any of her sur-
viving children. Should she die without exercising this

power, they were given to George, William and Eleanor, in the order named.

After the death of his son William, the testator wrote his Second Codicil, revoking all provisions of the will whereby the descendants of William were to benefit in the residuary estate. He also revoked the absolute gift to George of one-half of his share of the principal of the estate, and directed that the whole thereof should be held in trust.

In paragraph sixth of the Fourth Codicil, with which we are here principally concerned, the testator recited the provisions of paragraph ninth of his will, wherein he disposed of "the principal of the share of [a] daughter" dying without issue surviving her, and provided:

> "I now alter and modify said provision of said will to this extent. I direct that *if at the time of the decease of any daughter there shall be no descendants of hers then living that the share of said daughter shall be divided into as many parts or shares as at that time there shall be children of my son George W. Elkins then living and children of his then dead represented by descendants then living, and shall be subdivided as to the share of each set of descendants of a child of my said son then dead amongst them per stirpe upon the principle of representation.*"

But the testator immediately added these words:

> "The share falling to each child and descendant of my said son George W. Elkins shall not be paid over to the child or descendant then found entitled directly, but shall be held by the Trustees [to pay the income to the child or descendant entitled thereto until the expiration of the period allowed by the rule against perpetuities, when final distribution takes place]."

With these testamentary provisions before us, we proceed to the question of their interpretation, bearing in mind, as we stated in *Fox's Appeal,* 99 Pa. 382, 386, that each will "is to be construed from its four corners to arrive at the true intention of the testator. Decisions

upon other wills may assist, but cannot control the construction." See also *Mulliken v. Earnshaw,* 209 Pa. 226; *Price's Est.,* 279 Pa. 511.

The children of George W. Elkins base their claim to two-thirds of the income upon the theory that the conditions of the gift to them of Ida's share, as provided in the Fourth Codicil, have been satisfied. They assert that their interest in this part of the estate was contingent upon their being alive at the death of Ida, and upon her dying without leaving descendants to survive her. It is argued on their behalf that while Ida did not live to enjoy her life estate, such fact cannot destroy the alternative gift to them since they took by purchase, as direct objects of the testator's bounty, and not by inheritance from Ida. In other words, their interest was not dependent upon the taking effect of Ida's prior estate, and its failure did not cause their gift to lapse. They say that in the Fourth Codicil, when the testator said "the share of said daughter," he meant the prospective share of the daughter, using the word "share" as a unit of measure or distribution.

The position of the children of Eleanor Elkins Rice is that the provision of the Fourth Codicil in favor of George W. Elkins' children altered the terms of the ninth paragraph of the will only as to the share of a daughter who survived the widow, and thereafter died without issue; that the division into shares under the ninth paragraph was to take place upon the death of the widow, and as the daughter Ida did not survive her, the contingency provided for did not occur, and Ida had no "share" which could be made the subject of an alternative gift.

It is to be seen that the construction urged upon us by appellees would require that we read into the Fourth Codicil words which are not there, for the testator said nothing to indicate that the gift to George's children was to take effect only in the event that a daughter survive the widow. He said *"at the time of the decease of*

*any daughter,"* without relating it to the happening of any other event. We are always reluctant to supply words of material import to a will, and particularly to a will so carefully and skilfully drawn as this one. If testator had intended to add such a contingency to the gift, he would have used apt words to express his purpose.

However, appellees have advanced several considerations which, they say, require that this condition be read into the clause of gift. First, that the will as a whole is "patriarchal," and as its predominant characteristic is stirpital equality, it follows that the most narrow construction possible must be given to the codicil in order that the symmetry of the original testamentary scheme be preserved.

It is true that "a codicil shall not be construed to disturb or change the dispositions of a will further than is necessary to give effect to the provisions of the codicil": *Chauncey's Est.,* 335 Pa. 73, 76. But, as we said in *Foster's Est.,* 324 Pa. 39, 44, "However, the very purpose of a codicil is to alter or modify the will, and hence if there is any conflict the provision in the codicil must prevail." Where the testator's purpose is clear, we cannot by any rule of construction restrict the codicil to a meaning which would frustrate its intendment.

Without question the scheme of the original will was one of complete stirpital equality among the children of the testator and their respective descendants. And it is equally beyond question that in the codicils there is a sharp and clear departure from the principle of stirpital equality.

In the First Codicil, the testator indicated a preference for his children, Ida and George, and their descendants, in disposing of his country home. In the Second Codicil he further disturbed the original equality by completely eliminating the children and descendants of his son William from participation in the residuary estate. And in the Fourth Codicil, he emphatically de-

clared his intention that only the line of his son George should benefit by the failure of issue of either of his daughters. He there said: "It is my intention that no children of mine other than my said son George and that no descendants of any child of mine other than a descendant of my said son George shall take under any of the foregoing provisions. . . ."

In view thereof it is futile to insist that the testator had no intention to depart materially from the original scheme of stirpital equality. And to contend that he did not mean to prefer the descendants of George above those of his other children is to deny the plain meaning of his own forceful words. While he desired that Ida and her possible descendants should have an equal share in the residuary estate, yet if this gift could not take effect, his alternative purpose was that the children and descendants of George, *and no others,* should enjoy that share.

We can see no reason to ingraft upon the language of the Fourth Codicil a provision that the gift to the children and descendants of George was to be contingent upon the purely fortuitous event of Ida's surviving the widow. It is impossible to see in what way the time of her death could affect the manifest purpose of the testator to benefit the issue of George upon the extinction of her line. Such a condition would obviously be at variance with his expressed intention.

Appellees place great stress upon the phrase "the *share* of said daughter" used by the testator in this Fourth Codicil. They say that the codicil must relate solely to the event of Ida's death after the widow, because Ida would otherwise have no "share," and hence that this provision became inoperative.

But such an interpretation is difficult to reconcile with testator's use of the word "share" in the Second Codicil. There, after referring to the death of his son William, he said: "This direction covers the share of the residue as the same shall be swollen by the falling in of my son

*William's share."* The testator used the words "William's share" although William had predeceased him, and would not be alive at the death of the widow. It is clear that he meant, "such a share as William would have become entitled to had he survived." In the same codicil he spoke also of *"George's share,"* although no share had been given to him, *nominatim.* His meaning could only have been, "the share which George will enjoy if he survives." These two instances show that the testator conceived of a child's "share" as having existence prior to the death of the widow,—not as a definite, distributive part of the estate, nor as a vested, transmissible interest therein, but as that quantitative portion which he had mentally allotted to each of his four children and their descendants,—Ida's share, George's share, William's share, and Eleanor's share.

Therefore, the construction of the Fourth Codicil for which appellees so earnestly contend, cannot be sustained, and it is apparent that the direction in the ninth paragraph of the will to divide the estate into "parts or shares" at the decease of the widow was for the purpose only of ascertaining the life tenants, and of fixing the commencement of their estates at that time.

It seems to us that Ida's "share" was, after the exclusion of William and his descendants from participation in the residuary estate, the one-third portion which would have been held in trust for the payment of income to her for life, and for ultimate distribution to her descendants as remaindermen, had she survived or left issue. The Fourth Codicil substituted the children and descendants of George for Ida's descendants, in so far as the disposal of this portion of the estate was concerned.

Although we need not look beyond the will and its codicils to arrive at this result, the only cases which the diligence of counsel and our research have discovered that are pertinent to the question, support our view. In the case of *In re Whitmore,* [1902] 2 Ch. 66, the testatrix directed the payment of the income of her

residuary estate to two single sisters until the last of them died or married, and then, that the corpus be held in trust for the benefit of such of her brothers and sisters "who should be living at the decease or marriage of such surviving or last marrying sister, in equal shares." With respect to a married sister, Charlotte, the testatrix provided: "And I declare and direct that, with respect to the *share* of my said sister Charlotte Harrison . . . the same *share* shall be held in trust to pay the income thereof to her during her life . . . and after her decease the capital of the same *share* shall be held in trust for such one or more exclusively of the other or others of her children . . . as the said Charlotte . . . shall . . . direct or appoint; and in default of any such direction or appointment . . . in trust for and to vest in the child . . . or all the children . . . of the said Charlotte. . . ."

Charlotte survived the testatrix but died before the termination of the life estates. All of her children also died before the survivor of the life tenants. The personal representatives of her deceased children subsequently sought to obtain the share which Charlotte would have enjoyed had she survived. The lower court held that there was no determinable "share" which the personal representatives could take, because Charlotte's "share" never came into being. The appellate court reversed the court below, and held that the intention of the testatrix was to benefit directly the children of Charlotte, and that this could be effectuated only by construing the words "the share of my said sister Charlotte" to refer to "the aliquot share of the estate destined by the testatrix for Charlotte and her children."

Less apposite, but expressing the rule of which the Whitmore case is a logical extension, are those decisions holding that where a will directs that an estate be held in trust for a class in equal shares, to pay the income therefrom to the members of the class for their lives, with succeeding life estates and remainders over, and a

member of the class dies in the lifetime of the testator, such member's "share" in the estate does not lapse, but is to be held for the succeeding life tenants and remaindermen. See *In re Pinhorne*, [1894] 2 Ch. 276; *In re Powell*, [1900] 2 Ch. 525; *In re Harward*, [1938] 1 Ch. 632. The same rule prevails in this State. See *Martha May's Appeal*, 41 Pa. 512; *Hurd's Est.*, 305 Pa. 394.

The device of describing an alternative gift of a part of an estate as the "share" of one whom the testator intended primarily to benefit is a familiar one. In *Fahnestock's Est.*, 147 Pa. 327, the testatrix by her will divided her estate among four classes, composed of nephews and nieces. Should any member of certain of these classes predecease the testatrix, "the *part and share* of the one so dying" was to be equally divided among all the surviving nephews and nieces. One nephew and one niece predeceased the testatrix, and it was contended that the substitutionary gifts of their "shares" failed because they had not lived to acquire "shares." In the opinion which we affirmed, Per Curiam, it was stated (pp. 331-332) : "What was to prevent the testatrix from using these prospective interests, which were as real as any others when the will was written, as units of distribution among the surviving beneficiaries. This was all that the testatrix intended when she spoke of the shares of the nephews or nieces who should die before her. . . . The shares of parties dying who, by reason of their death, never had any shares, are often apportioned among the survivors . . . [The testatrix] used the phrase as one descriptive of the alternative gift."

In *Heath's Est.*, 286 Pa. 335, the testator divided his estate among such of his children as should be living at the termination of a prior life estate. He then provided, "and if there should be a child or children of any of my children then deceased they or it shall have the *share of the deceased parent.*" One of the testator's sons survived him, but predeceased the life tenant, and we

affirmed the award of his "share" to those of his children who were alive at the termination of the life estate. We said (p. 342) : "In the present case, the children of deceased remaindermen take the shares their respective parents *would have received if alive* . . ." While the precise question of construction here involved was not raised in Heath's Est., it is apparent that the award which we affirmed could not have been sustained if we had there adopted the view of the present appellees, because the contingency upon which the "share" of the deceased son of the testator was to be determined never occurred.

It would unduly prolong this opinion to discuss at length the further contentions of appellees that the Fourth Codicil must be construed to refer to the death of a daughter after the decease of the widow. We have examined them carefully, and find that they are without merit. For example, it is said that such a meaning must be placed upon the codicil because the alternative gift would naturally have been made to George and not to his children and descendants. The answer to this assertion is that testator evidently intended that such children and descendants should be preferred to their father in the gift of the share, because he *expressly provided* that George, if living, should take at the death of the *last* of his own descendants.

Nor does it follow from the construction which we have placed upon the codicil that the children of George became entitled to Ida's share of the monthly payments of income during the lifetime of the widow. The Fourth Codicil specifically refers to that portion of the ninth paragraph of the will disposing of the "principal" of the estate, and not to the preceding portion, which relates to the payment of income to the testator's children in monthly instalments, subject to the widow's annuity.

These and the other considerations advanced by appellees have been duly weighed by us in construing the

will and its codicils, but as they are insufficient to overcome the manifest intention of the testator, it would serve no purpose further to elaborate them.

We have not considered the extrinsic evidence of the circumstances surrounding the testator when this codicil was written, which was offered by appellants, received subject to objection, and later rejected by the court. It is unnecessary to pass upon its admissibility, because it has no clarifying effect. At most, it suggests that the testator knew of Ida's illness at that time, but we cannot draw from it the further inference that he knew the serious nature of her condition or that he expected her to predecease his wife.

Appellees have referred here, and in the court below, to the fact that the children of George W. Elkins acquiesced in the payment of one-half of the income of the residuary estate to Eleanor Elkins Rice until her decease in 1937. Their letter to the trustees, dated November 14, 1919, one month after the death of their father, makes it clear that they desired their aunt to receive this portion of the income during her lifetime, but they expressly reserved their right to claim two-thirds of the income thereafter. As appellees assert that they have no desire to make the generosity of appellants grounds for an estoppel, we have attached no significance whatever to this question.

For the reasons stated, the conclusion which we have reached is that William M. Elkins, George W. Elkins, Jr., Stella F. Tyler, and Louise E. Sinkler, the children of George W. Elkins, deceased, are now entitled to receive in equal shares two-thirds of the net income of the residuary estate held in trust, and that the balance of one-third of the income is payable in equal shares to George D. Widener and Eleanor Widener Dixon, the children of Eleanor Elkins Rice, deceased.

The decree of the court below dismissing the exceptions and approving the schedule of distribution is reversed, and the record is remitted with directions that

a schedule of distribution be prepared in accordance with the views here expressed, and for such further proceedings as may be necessary to carry them into effect; costs to be paid out of the residuary estate.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot concur in the majority view, because, by a careful study of the ninth paragraph of the will and the sixth paragraph of the fourth codicil, it is clear to me that the learned court below correctly decided that the income, and ultimately the principal, of the residuary estate is distributable to the children of testator's son, George W. Elkins, and his daughter, Eleanor Elkins Rice, per stirpes; that is to say, that the appellants, the four children of George, take one-half, and the appellees, the two children of Eleanor, take the other one-half. That this was the intent of the testator is obvious from a reading of the will and its codicils, without the necessity of resorting to conjecture or speculation.

The vital issue in this case is as of what time did testator contemplate that Ida and her descendants would fail in order to enable George's children or descendants of his deceased children to take. Was it subsequent to the death of the widow of testator, as is consonant with the eighth clause of the ninth paragraph of his will? Or did he abandon this intention by the sixth paragraph of the fourth codicil, as is asserted by the majority, and mean the failure of Ida and her descendants at any time?

Testator, in the third clause[1] of the ninth paragraph of his will, states, in as clear language as can be used,

---

[1] "IN TRUST, as to the principal of my residuary estate, subject of course to the aforesaid annuities, at the decease of my wife, to divide the same into as many parts or shares as, at that time, there shall be children of mine then alive, and children of mine then dead, represented by descendants then alive, and to subdivide the share falling to each set of descendants of a child of mine then dead, amongst them 'per stirpe,' upon the principle of representation."

that the principal of his residuary estate was to be divided into shares at the death of his widow, and not before. Here testator makes it plain that it is his intention that during the lifetime of his widow, the interest in the principal of a child surviving him was subject to the contingency that the child or his or her descendants *must* survive the death of the widow. No interest whatsoever passed in the principal or its income to Ida since she died without descendants prior to the death of her mother. This fact is conceded by the majority.

The clear purpose of the eighth clause[2] of the ninth paragraph of the will is to avoid an intestacy as to the share of a child of the testator or his or her descendants who survive the testator's widow and thereafter die without descendants, and thus in this clause it is provided that, under such circumstances, this share is to be held in trust for the other children of testator then living and descendants then living of deceased children. It was testator's intention to change this eighth clause of the ninth paragraph by the sixth paragraph of the fourth codicil,[3] so that in case a daughter of his or her

---

[2] "IN TRUST, as to the half share held in trust for any son of mine, and as to the whole share held in trust for any daughter of mine, in case there shall be no descendant of a *life tenant* alive at his or her decease, to divide the principal of the share into as many sub-parts or sub-shares, as, at the time of the decease of such *life tenant,* there shall be children of mine then alive, and children of mine then dead, represented by descendants then living, and to subdivide the share falling to each set of descendants of a child of mine then dead, amongst them 'per stirpe,' upon the principle of representation. . . ." (Italics added).

[3] "By my will I have directed that in case at the time of the decease of *any daughter* of mine there shall be no descendant of hers then alive at the time of her decease capable of taking, that the principal of the share of such daughter so dying shall be divided into as many sub-parts or sub-shares as, at the time of the decease of *such daughter* there shall be children of mine then alive and children of mine then dead represented by descendants then living and shall be subdivided as to the share of each set of de-

descendants survived his widow and died without descendants, this share, instead of being held in trust for his other children then living and descendants then living of deceased children, as originally provided by the will, was to be held in trust solely for the children or descendants of his son George. While the testator, in this paragraph of the codicil, does not actually quote verbatim the eighth clause of the ninth paragraph of the will, nevertheless he therein recites the substance thereof so clearly that it is unmistakable that it is that clause of the will alone, and not the provisions of the entire ninth paragraph, as held by the majority, to which he refers as the part he intended to alter. Testator could not have expressed more clearly a limited change in a particular provision of his will. That this is the only portion of the will he intended to change is further substantiated by the following words contained in the codicil: "I now alter and modify said provision of said will *to this extent.*" (Italics added.) Testator having made this specific change, that negatives by implication an intent to make any other in the provisions of his will: *Line's Estate,* 221 Pa. 374, 379.

Bearing in mind the rules of testamentary interpretation that a will and codicil must be construed together and that a codicil shall disturb the disposition of the original will only where its provisions are plainly inconsistent with the will *(Vernier's Estate,* 282 Pa. 194,

---

scendants of a child of mine then dead amongst them *per stirpes,* upon the principal of representation. I have further made certain directions as to the payment or holding IN TRUST of said shares.

"I now alter and modify said provision of said will to this extent.

"I direct that if at the time of the decease of *any daughter* there shall be no descendants of hers then living that the share of said daughter shall be divided into as many parts or shares as at that time there shall be children of my son George W. Elkins then living and children of his then dead represented by descendants then living, and shall be subdivided as to the share of each set of descendants of a child of my said son then dead amongst them *per stirpe* upon the principle of representation." (Italics added).

198); that if a codicil is subject to two interpretations, one of which follows the main purpose as expressed in the will and the other is not consistent with it, the consistent interpretation will be adopted, because, generally speaking, there is no presumption that a codicil is intended to change a will; and that a codicil should not be held to interfere with any of the specific provisions of the will, unless its language naturally and obviously produces such result, or the terms of the codicil expressly recognize the alteration *(Rainear's Estate,* 304 Pa. 539, 543, 544), I can find nothing in the codicil here under consideration indicating the slightest intention on the part of the testator to abandon the particular plan for distribution so carefully set up in the ninth paragraph of his will. That plan was that at the decease of the widow the principal should be divided into as many shares as at that time there should be children then alive and children then dead, represented by descendants then alive, to subdivide the share falling to each set of descendants of a child then dead among them per stirpes, upon the principle of representation. The construction given the sixth paragraph of the fourth codicil by the majority opinion, however, results in the distortion of this scheme so that at the death of the widow the principal will be divided into as many shares as at that time there shall be children then alive; children then dead, represented by descendants then alive (the share falling to each of the descendants of a child then dead to be subdivided among them per stirpes, upon the principle of representation); and children then dead not represented by descendants then alive (this latter share being the share Ida would take if alive, which under the majority interpretation will go to George's children or their descendants).

To arrive at the true intent of the testator, the codicil, which amends only the eighth clause of the ninth paragraph, must be read in conjunction with the prior clauses of that paragraph. The eighth clause has no

application to the division of the residuary estate into shares, nor does the codicil. By the third clause of that paragraph the time for distribution was fixed at the death of testator's widow and it was not altered by the codicil. The eighth clause, in order to avoid intestacy under the circumstances, merely directed the course of the shares already created in the contingency that a daughter, a *life tenant*, who survived the widow, died without descendants. It had no application whatsoever to a child who died in the lifetime of the widow without descendants, because such a child never became a *life tenant* of any share, and the codicil did not make any change therein, except as to the share of a child of testator, or its descendants, who survived the widow and thereafter died without descendants.

From the preamble of the dispositive part of this fourth codicil, it is evident testator uses the term "any daughter" to describe a daughter who had become a life tenant. This is manifest from a reading of the eighth clause of the ninth paragraph of the will to which the preamble refers. It logically follows that when testator in the dispositive part of that codicil uses the term "any daughter," he signifies thereby only a daughter who has become a life tenant. The interpretation of the majority does great violence to the express language employed by the testator by, in effect, inserting after the words "any daughter" the qualifying phrase "whether she be a life tenant or not."

The learned President Judge of the Orphans' Court expressed my views when he aptly said in his adjudication in this case: "It being clear that the division into shares was intended to be effected after the death of the widow and not before, and, the eighth clause of the ninth paragraph of the will, in perfect sequence, providing what should become of a daughter's share, so determined at that time in case the daughter died without descendants, and the preamble to this dispositive part of the sixth paragraph of the fourth codicil clearly re-

citing the said eighth clause of the ninth paragraph of the will for alteration, it follows that no case contemplated by the dispositive part of the sixth paragraph of the fourth codicil ever arose and the codicil therefore became inoperative."

The wills which were the subject of adjudication in the cases cited in the majority opinion differ materially from that with which we have here to deal, and therefore afford no assistance whatever in ascertaining testator's intention in the instant case. Where the true intent of a testator can be gathered from the words he actually uses, as is so in the instant case, it is needless to employ other cases in an attempt to shed light on his meaning. It is a well established principle in all will cases that precedents are of little aid in ascertaining the actual intention of testator, for the words of the particular instrument under consideration must control: *Mifflin's Estate*, 279 Pa. 429, 432; *Kidd's Estate*, 293 Pa. 56, 61.

It seems to me that the majority opinion disregards one of the contingencies necessary to vest any gift in the children of George as direct legatees; that is, that a daughter or her descendants must survive the widow. Ida, having died in the lifetime of her mother without descendants, the share which might have passed to George's children, had she or her descendants survived, passed by the ninth paragraph of the will, when read in conjunction with the codicil, to George and Eleanor upon the death of the widow. There is nothing inconsistent with this plain expression of testator's intention, and I would, therefore, affirm the decree of distribution of the learned court below.

Mr. Chief Justice SCHAFFER joins in this dissent.