## Davis's Estate.

Argued November 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*C. Leo Sutton,* for appellants.

*Charles S. Crawford,* with him *J. Edgar Wilkinson,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, January 4, 1943:

These appeals involve a question of interpretation arising under a decedent's will.

Kate Irvin Davis died testate, a resident of Philadelphia, on November 23, 1919. In the Eleventh Item of her will testatrix provided as follows: "All the rest residue and remainder of my property . . . I give devise and bequeath unto The Philadelphia Trust Safe Deposit and Insurance Company . . . in trust, nevertheless: To divide the same into as many equal parts as I have children, excluding my son Howard Langworthy Davis, who survive me and who, predeceasing me, leave lawful issue surviving me, and to increase the number of said shares by one 'additional share', which 'additional share' shall be applicable to the issue of Howard Langworthy Davis by the body of his present wife Clara Davis, and which 'additional share' shall be and is hereinafter dealt with, treated and separately disposed of in this Eleventh Clause of my Will . . ." It was directed that the income from one of the shares be paid to each child, excluding Howard, for life, and that "upon the decease of any child, excluding my son Howard Langworthy Davis", there should be paid over "to the lawful issue of such child" the share of principal "heretofore directed to be held in trust for the life of said child." Finally, as to the shares set apart for children other than Howard, whom she excluded for reasons set forth in an earlier part of the will, testatrix provided: *"And in case said child dies without leaving issue him or her surviving, I direct said trustee to pay over and transfer said share, free of all trust, in equal parts to my children, excluding my son Howard Langworthy Davis, who survive said child and to the issue of any child who did not survive said child, such issue to take per stirpes and not per capita."*

Having thus disposed of the shares given to her dutiful children, testatrix, in a separate paragraph, gave "the said 'additional share', to be computed and determined as hereinbefore provided," in trust "to divide the said 'additional share' into as many parts or shares as there are children (hereinafter designated for convenience and easy reference 'grandchildren') of the body of said Clara Davis by my son Howard Langworthy Davis," income from one of such shares to be paid to "the grandchild for whose benefit such share was formed and created, until such grandchild arrives at the age of thirty-five (35) years," at which time it was directed such grandchild should become entitled to receive the principal of the share set apart for him, absolutely.

When testatrix made her will and at her death she had six children — one daughter, Edna Cadwallader Davis, and five sons, Edward, Irvin, Malcolm, Thomas, and the excluded son Howard. Malcolm died December 4, 1929, whereupon one of the five shares set apart for testatrix' dutiful children was paid over to his two children, and on July 17, 1937, Thomas died without leaving any issue to survive. Howard still survives as do also the three other children of testatrix—Edna, Edward and Irvin. Howard's three children have all arrived at the age of 35 and each has received his equal portion of the sixth or "additional" share.

At the audit of the trustee's fourth account, filed following the death of Thomas without issue, Howard's three children entered a claim to a portion of the fund from which the income was paid to Thomas during his lifetime. The auditing judge ruled that the claim must be dismissed, stating: "Whatever the testatrix may have desired to express, the intention expressed by her excludes the children of Howard, who survives Thomas, from a share of her residuary estate." Exceptions to this ruling were dismissed by the court en banc and the matter is now before us on appeal.

Thomas having died without issue, testatrix has directed that his share be given "to my children, excluding

my son Howard Langworthy Davis, who survive said child [Thomas] and to the issue of any child who did not survive said child.". Appellants concede this language excludes them from any participation in the fund for distribution, since Howard, their father, survived Thomas and they are not, therefore, "the issue of any child who did not survive," but urge, in effect, that this Court may reform the unambiguous language used to bring them within its terms, because of a supposed intention of testatrix, allegedly gathered from reading the will as a whole, "clearly to establish equality between her children and Howard's children." Their contentions are well summarized by the court below as follows: "Howard's children earnestly contend that the will as a whole requires that they be substituted for their parent, who for purposes of this clause should be considered dead; that they would participate in Thomas' share had their parent been dead, and their rights should not depend upon the accidental and irrelevant fact of the order in which deaths occur." We all agree that such position is wholly untenable and that the case was rightly decided by the court below.

The contention that the dominant scheme of the will is equality of distribution between testatrix's dutiful children and the children of Howard ignores that each of the former was given a specific legacy of $25,000 as compared with $18,000 given the wife and children of Howard (Items Three to Eight); and it also fails to take into account that the children of Howard were given no share whatever in testatrix' personal effects, all of which were bequeathed to the dutiful children "share and share alike." As bearing upon the supposed intention contended for it is likewise significant that in directing division of the residuary estate into shares testatrix declared the share set apart for Howard's children "shall be and is hereinafter dealt with, treated, and separately disposed of"; that she at all times referred to such share as an "additional share"; and that

when she came to dispose of this share, in a separate paragraph, she described it as "the said 'additional share', *to be computed and determined as hereinbefore provided.*" If testatrix had intended appellants should receive also one-sixth or an "additional share" of the shares given the children other than Howard, in the event of their deaths without issue, it is not unlikely that she would have so stated, providing that the same restrictions should apply, including postponement of payment of principal until age 35, as in the case of appellants' original share. Clearly the most that could possibly be said from a consideration of the entire will is that the matter is left in doubt and, hence, the whole basis of appellants' argument fails. "Words and phrases may be supplied or rejected when warranted by the immediate context or the general scheme of the will, but not merely on a conjectural hypothesis however reasonable, in opposition to the plain and obvious sense of the instrument": *Bender v. Bender,* 226 Pa. 607, 613. See also *Jacobs' Estate,* 343 Pa. 387, 392. Nor is it a valid argument to support appellants' position, in the circumstances disclosed, that the contrary view necessitates an inference that testatrix intended to die intestate in the remote possibility that all of her children, excepting Howard, should die without issue, even though her three grandchildren by him might still be living. As said in *Nebinger's Estate,* 185 Pa. 399, 404: "While a construction is not to be adopted, if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportion of reformation. The question is confined to the meaning of what the testator has said, and does not extend to the consideration of what he might have said, but did not." See also *Hirsh's Trust Estate,* 334 Pa. 172, 178; *Jacobs' Estate,* supra, 394.

*Galli's Estate,* 340 Pa. 561, so strongly relied upon by appellants, is not authority here. In that case the word "surviving", appearing in a provision of a family settlement agreement that the share of any nephew or

niece dying without issue should be held "for the surviving nephews and nieces for the same uses, purposes and estate" as their original shares, was construed "other", in order to give effect to the "obvious general intent" of the instrument "which was to create equality among the stirpital lines of children of nephews and nieces." That case thus involved merely the *substitution* for one word of another which has frequently been regarded as having an equivalent meaning—and, therefore, presents an instance of legitimate construction—whereas in the present case we are asked to reform and reconstruct the words "to the issue of any child who did not survive said child" by *inserting* the word "other" between the words "any" and "child" and by disregarding and nullifying the entire qualifying phrase "who did not survive said child." This we do not have the power to do, especially where, as here, the will is a skillfully and carefully drawn one. See *Elkins' Estate,* 339 Pa. 193, 200; *Jacobs' Estate,* supra, 392. Moreover, as above stated, there is in the present will no "obvious general intent" to create an equality of distribution. If, as appellants assert, there could be no question as to their right to participate in distribution of Thomas' share were their father, Howard, not still living, then this must be so, not because of any dominant desire for equality inherent in the will as a whole, but upon the theory that there is nothing in the language or general scheme of the will to justify a departure from the explicit terms of the provision now in question, which, standing alone, might be sufficient to carry a share to them were the facts as supposed. In this connection it is noted that the decision of the court below, and consequently our decision on these appeals, is expressly without prejudice to any possible rights of appellants upon distribution of the shares of testatrix' still living children, should any of them die without issue subsequent to the death of appellants' parent, Howard. On the sole question now presented, i. e., whether decedent's

will excludes appellants from participation in distribution of the share previously held in trust for Thomas, we conclude that the answer of the court below, in the negative, was correct and must be affirmed.

Decree affirmed. Costs to be paid by appellants.