## Sowers Estate.

Argued November 23, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*James R. Koller,* with him *Siegrist, Koller & Siegrist,* for appellant.

*Philip S. Davis,* with him *Gideon R. Light* and *Bickel, Davis & Katz,* for appellees.

OPINION BY MR. JUSTICE BELL, January 3, 1956:

Sowers died testate on April 28, 1923 leaving a wife, Minnie E. Sowers who died on November 30, 1924 without re-marrying, and three children, John E. Sowers, Marmaduke Sowers and Catherine E. Sowers, as well as an adopted daughter, Josephine R. Sowers who was the daughter of testator's daughter, Rebecca, who predeceased testator. Neither Rebecca nor her son, John A. Gernert, Jr., who is claiming under a class gift in the eighth paragraph of Sowers' will, were named in or specifically bequeathed anything by testator's will. Josephine R. Sowers died on January 24, 1952, without issue. For undisclosed reasons, the executor filed his first account on September 18, 1952.

Testator in the fifth paragraph of his will left his residuary estate "in trust nevertheless, for the uses, persons and purposes . . .

". . . to pay said net income to the following persons and in the following proportions, viz.:

"In trust to pay over one-third of *said net income,* in semi-annual payments, unto my beloved wife, Minne E., *during her natural life or so long as she remains my widow;* in trust to pay over *the remaining two-thirds part of said net income,*\* in semi-annual payments, unto my children, John E. Sowers, Marmaduke Sowers,

---

\* Italics throughout, ours.

Catherine E. Sowers and my adopted daughter Josephine R. Sowers, in equal shares, share and share alike, *during their life time.*

"In trust, *in case of the re-marriage* of my said wife, to pay over her said one-third part of *such net income unto my children,* John E. Sowers, Marmaduke Sowers, Catherine E. Sowers and my adopted daughter, Josephine R. Sowers, in equal shares, share and share alike, *during their life time.*

"In trust upon the death of my said children, including my adopted child, *as each one* shall be deceased *to pay over* to the lawful issue of such child or children *the full part of the principal fund of which the deceased parent was receiving the income,* in equal shares, share and share alike; *and further,* in case any *child shall die before the death or re-marriage* of my said beloved wife, Minne E., *then upon such death or re-marriage,* to pay over to the lawful issue of such deceased child or children, including issue of my adopted child, the *full one-fourth part of one-third of said principal fund* from which my said beloved wife was receiving the income as herein provided."

It is obvious that the will was unskillfully drawn in two important contingencies—it expressly provided what testator wished to happen to the one-third part of the net income which was payable to his wife, in case of the *re-marriage* of his wife, but (a) it does not expressly provide what testator wished to happen to said income in the event of his wife's *death* and (b) consequently to the one-third part of the principal from which she was receiving the income, except—and this is a very important exception—namely, if one of his children died *before his wife's death or re-marriage* such deceased child's lawful issue should be paid a full *one-fourth* of the *principal* from which his wife was receiving the income. His will would clearly have given to

his named children and their lawful issue *in any and every eventuality* the income and the principal of the one-third share set apart for his wife, if the words "death or" had not been omitted in one sub-paragraph of paragraph 5.

The Court below held that an intestacy resulted after the wife's death in one-third of the corpus and income, even though an intestacy could not possibly result as to this principal if a (named) child died before the re-marriage or death of testator's wife leaving lawful issue, since in that event one-fourth of said principal was, we repeat, expressly payable to the lawful issue of such deceased child. *If an intestacy of principal were declared as to testator's children* in event of his wife's death, *but no intestacy of principal as to their issue,* the situation which would arise would be both anomalous and absurd.

"The pole star in the construction of every will is the testator's intent: Woelpper's Appeal, 126 Pa. 562, 17 A. 870; Mulert Estate, 360 Pa. 356, 61 A. 2d 841; Byrne's Estate, 320 Pa. 513, 181 A. 500. [Britt Estate, 369 Pa. 450, 454, 87 A. 2d 243; O'Reilly Estate, 371 Pa. 349, 352, 89 A. 2d 513; Wright Estate, 380 Pa. 106, 107, 110 A. 2d 198]." The testator's intention must be ascertained from the language and scheme of his will: "it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words": *Britt Estate,* 369 Pa., supra.

Furthermore we said in *Lifter Estate,* 377 Pa. 227, 231, 103 A. 2d 670: "A Court has no power to rewrite a will to supply a testator's unexpressed intent, or to cover circumstances or conditions or contingencies which he apparently did not foresee or provide for.

"Moreover: 'The Court is always reluctant to supply words of material import to a will: Elkins' Estate,

339 Pa. 193, 12 A. 2d 83. ". . . interpretation is never to assume the proportions of reformation . . ." ' Berger Estate, 360 Pa. 366, 371, 61 A. 2d 855.

" ' "Words and phrases may be supplied or rejected when warranted by the immediate context or the general scheme of the will, . . .": Bender v. Bender, 226 Pa. 607, 613. See also Jacobs' Estate, 343 Pa. 387, 392': Davis's Estate, 346 Pa. 247, 251, 29 A. 2d 700.

" 'A word or words may be supplied where there is a clear inference from the whole will that the words were omitted [by mistake]: Hellerman's Appeal, 115 Pa. 120, 8 A. 768; Jacobs' Estate, 343 Pa. 387, 22 A. 2d 744; Wittmer's Estate, 151 Pa. Superior Ct. 274, 30 A. 2d 197; 2 Page on Wills (3rd ed.), page 861': Riegel v. Oliver, 352 Pa. 244, 247-248, 42 A. 2d 602."

To summarize: Mr. Sowers' intent is clear in the following particulars: (1) he willed one-third of the net income of his residuary estate to his wife *for her life or so long as she remained his widow,* and the remaining two-thirds of said residuary net income to his three named children and his adopted daughter in equal shares *during their respective life time;* (2) as each of his children and his adopted child died, he directed his trustees *to pay over* to the lawful issue of such deceased child *"the full part of the principal* fund of which the *deceased parent was receiving the income",* and (3) *"and further,* in case any child shall die before the *death or re-marriage* of my . . . wife . . . *then upon such death or re-marriage,* to pay over to the lawful issue of such deceased child . . . including issue of my adopted child, *the full one-fourth part of one-third of said principal* fund from which my said beloved wife was receiving the income . . .".

Applying the aforesaid principles to this will, we are confronted with a narrow and very difficult question: Can we say from the language and scheme of

testator's will that the words "death or" were clearly omitted by mistake in the following sub-paragraph of paragraph 5 of his will, viz: "In trust, in case of the [death or] re-marriage of my said wife, to pay over her said one-third part of such net income unto my children, John E. Sowers, Marmaduke Sowers, Catherine E. Sowers and my adopted daughter, Josephine R. Sowers, in equal shares, share and share alike, during their life time." To hold otherwise would, we repeat, produce the absurd result that there would be an intestacy as to one-third of the principal so far as his children were concerned but no intestacy of principal if a child died before the death or re-marriage of his wife, in which event the trustees were directed to pay over to the lawful issue of such deceased child "the full one-fourth part of one-third of said principal fund from which my said beloved wife was receiving the income . . ."

In this dilemma we are convinced that the testator's intention would best be fulfilled and the interest of Justice best be served by holding that the words "death or" were omitted inadvertently and by mistake in the aforesaid sub-paragraph of his will. Such a construction ties in with and harmonizes all the other paragraphs and provisions of testator's residuary estate trust *both as to income and principal.*

The Court below correctly refused to allow counsel fees to be paid out of the trust to counsel for the exceptants. No new assets or additional funds were created by the filing of exceptions to the executors' or trustees' account. All of the assets of the estate were included in the Fiduciary Account and the only question was whether they should be retained as part of the trust or distributed, and if so, how.

It is only in very exceptional cases that an exceptant to the account of an executor, administrator or

trustee in the Orphans' Court will be allowed counsel fees out of the fund. The rule in such cases is that the exceptant must pay his own counsel fee.

Where the fund is in the hands of the court and in no jeopardy, except from the possible mistake of the court in dealing with it, and an exceptant is merely protecting his own interest, he will not be allowed counsel fees, although through his efforts others may also be benefited. *Harrison's Estate,* 221 Pa. 508, 70 A. 827; *Peoples-Pbgh. Tr. Co. v. Pbgh. U. Corp.,* 334 Pa. 107, 114, 5 A. 890.

The Court below likewise correctly decided that upon the death of each of his children and his adopted daughter, Josephine, the principal of the trust fund created for his said grandchildren should be paid to them including the grandchild's share of the stock of the Sowers Printing Company, which was disposed of in the sixth paragraph of testator's will. The direction therein as to sale is subordinate to an *absolute* gift of the principal of the trust. ". . . an absolute gift cannot be limited or fettered by restrictions on sale or alienation." *Stineman v. Stineman,* 382 Pa. 153, 157, 114 A. 2d 137.

However, appellant is correct in contending that a lower Court is without power to file a revised schedule of distribution after an appeal from the decree of said Court has been taken to an Appellate Court. "Moreover, as we said in Gilbert v. Lebanon Valley Street Ry. Co., 303 Pa. 213: 'At common law a court of first instance is without jurisdiction to proceed with a cause after the record thereof has been removed to an appellate court. This rule still applies in the absence of a statute providing otherwise.' Here, there is no such statute. So, also, we said in Ewing v. Thompson, 43 Pa. 372, 376: 'The effect of that writ [certiorari] was to stay further proceedings in the court below, and to

remove the record of the case into this court. That such is the effect of a certiorari, except in cases where the legislature has made a different rule [which here it has not], is the doctrine of all our cases. It is not itself a writ of supersedeas, but it operates as one by implication.' " *Harwood v. Bruhn et ux.,* 313 Pa. 337, 341, 170 A. 144.

John A. Gernert, Jr. is a son of testator's deceased daughter, Rebecca, and obviously the grandchild of the testator. He is unprovided for in the will unless he comes in as a member of a class under paragraph 8 of the will. He claims that he is entitled to take as an "other" grandchild, since Josephine R. Sowers died without lawful issue. Paragraph 8 reads: "8—I order and direct that if any of my *said* children, including my adopted child, Josephine R. Sowers, should *die without lawful issue,* the share in the principal of the trust fund hereby created, which is bequeathed to the lawful issue of my said mentioned children, shall in such event be divided *equally among my other grandchildren* living at such time, share and share alike."

It is not clear what testator meant by the words "among my other grandchildren", but it is clear that in every paragraph and sub-paragraph of the residuary trust he makes provisions only for his three children, naming them, and his adopted daughter, Josephine, and their respective lawful issue. We believe that the scheme of testator's entire will plainly shows his intention to exclude John * and to give the principal of his

---

* We are familiar with authorities which hold that the fact that he had excluded John Gernert in his will would not prevent John from taking in the event of an intestacy. ". . . even though an heir be expressly excluded by a will, he takes, nevertheless, if an intestacy results, since his taking is not by reason of the will but, under the intestacy, by operation of law: Bruckman's Estate, 195 Pa. 363, 45 A. 1078; Gibbon's Estate, 317 Pa. 465, 468, 177 A. 50, 51; Habecker's Estate, (No. 1), 43 Pa. Superior Ct. 86.": *Verner Estate,* 358 Pa. 280, 286, 56 A. 2d 667.

estate to the lawful issue of his four named children, and that in paragraph 8 he was following said scheme of distribution and intended the principal share of a child who died without lawful issue to be divided among the other (living) grandchildren of his named children.

The decree of the lower Court is reversed and a new schedule of distribution and a decree of the Orphans' Court shall be entered in accordance with this opinion. Costs shall be paid out of the estate.