## Willis Estate

*Barnes, Dechert, Price, Myers & Rhoads,* for accountants.

*Norman H. Brown* and *Bruce L. Castor,* for descendants.

*James L. Baxter,* guardian and trustee ad litem, pp.

KLEIN, P. J., May 4, 1957.—Mary Willis died on January 8, 1920, leaving a will and codicil by which, inter alia, she provided as follows:

"FOURTEENTH: One-third of what remains of my estate, real, personal or mixed, I give, and bequeath unto my Trustees hereinafter named, IN TRUST, nevertheless, for the use and benefit of my said son, Charles Carmalt Willis, if he survive me, so long as he shall live. Should he, however, fail to survive me, or surviving, afterwards die, leaving his said wife, Edith, me and him surviving, then IN TRUST, for the use and benefit of the said Edith, until her remarriage or death, whichever shall first occur. At the termination of said Trust for the said Charles and for the said Edith, (by the death of the said Charles, if he survive her, or upon her remarriage or death, if she survive him), I desire and direct that the share of my estate so held In Trust shall be paid and distributed to and among such persons and in such manner as my said son, Charles Carmalt Willis shall, by last will and testament or writing in the nature thereof, order and direct. Should my said son, Charles Carmalt Willis, fail to exercise the above power of disposition, then I desire and direct that said Trustees continue to hold the said third, In Trust, for the further use and

benefit equally of such of the children of the said Charles, or for the use and benefit, per stirpes, of such of the issue of any deceased child, as shall still survive, such issue to take the income only that said parent child would have taken if still living, (or In Trust for both children and issue, if both survive), but for the further period of twenty-one years after the death of the said Charles or the re-marriage or death of the said Edith, whichever shall last occur, and for no longer; that this entire Trust shall then end, and that the principal of the said third shall then vest in such then surviving children, then surviving issue or both, in the same proportions as they shall have been receiving the income therefrom immediately prior to such ending.

"To all such distributees who are then of age, distribution of principal, as aforesaid, shall be made at once, but if any be still minors, then the distribution shall follow at the age of twenty-one years.

"Pending this Trust for payment of income, as aforesaid, should the income share of any income taker be released by death without surviving issue, there shall be no lapse, but the share so released shall thereafter become a part of the total income, and be distributable among the survivors as above provided. Should, however, neither the said Charles, nor the said Edith, nor any issue of the said Charles survive me; or, should the said Edith, surviving, re-marry or die his widow, having no issue by the said Charles then surviving, then the distribution of both income and principal hereinafter provided as to the other two-thirds of my residuary estate shall be of, and include the entire three-thirds thereof.

"FIFTEENTH: Another third of said residuary estate, I give, devise and bequeath unto the said Trustees, IN TRUST, nevertheless, for the sole and separate use and benefit of my said daughter, Ella Cora

Heyl, if she survives me, so long as she shall live. Should she, however, fail to survive me, or surviving, afterwards die, leaving her daughter, Marion W. H. Chauncey, me and her surviving, then IN TRUST for the sole and separate use and benefit of the said Marion so long as she shall live. At the termination of said Trust for the said Ella and for the said Marion, by the death of the last survivor, I desire and direct that said Trustees continue to hold the said third IN TRUST for the further use and benefit equally of such of the children of the said Marion, or for the use and benefit, per stirpes, of such issue of any deceased child of the said Marion, as shall still survive, such issue to take the share only that the parent child would have taken if still living, (or In Trust for both children and issue if both survive), but for the further period of twenty-one years after the death of the said Ella or the said Marion, whichever shall last occur, and for no longer; that this entire Trust shall then end; and that the principal of the said third, shall then vest in such then surviving children, then surviving issue or both, in the same proportions as they shall have been receiving the income therefrom immediately prior to such ending.

"To all such distributees who are then of age, distribution of principal as aforesaid, shall be made at once, but, if any be still minors, then the distribution shall follow at the age of twenty-one years.

"Pending this Trust for payment of income, as aforesaid, should the income share of any income taker be released by death without surviving issue, there shall be no lapse, but the share so released shall thereafter become part of the total income, and be distributable among the survivors as above provided. Should, however, neither the said Ella nor the said Marion, nor her issue, survive me, or if surviving, at any time within the twenty-one years after the death

of the last survivor of the said Ella and Marion, no issue of the said Marion still survive, then the distribution of both income and principal hereinabove and hereinafter provided as to the other two-thirds of my residuary estate shall be of, and include the entire three-thirds thereof.

"SIXTEENTH: The remaining third of said residuary estate I give, devise and bequeath unto the same Trustees, IN TRUST, nevertheless, for the equal use and benefit of such of my said Adams grand-children, Helen Gilberta Nice (nee Adams), Carmalt Willis Adams and Harry Lawson Adams, as shall survive me, so long as they shall live, issue surviving me of any deceased grand-child, however, to take per stirpes, the income share the respective parent grand-child would have taken had he, she or they survived me. At the termination of said Trust for my said three grand-children, with the death of the last survivor of them I desire and direct that said Trustees continue to hold the said third IN TRUST for the further use and benefit, per stirpes, of their issue still surviving, for the further period of twenty-one years, and no longer; that this entire Trust shall then end, and that the principal of the said third, shall then vest in such then surviving issue in the same proportions as they shall have been receiving the income therefrom immediately prior to such ending.

"To all such distributees who are then of age, distribution of principal as aforesaid, shall be made at once, but if any be still minors, then the distribution shall follow at the age of twenty-one years.

"Pending this Trust for payment of income, as aforesaid, should the income share of any income taker be released by death, without surviving issue, there shall be no lapse, but the share so released shall thereafter become a part of the total income and be distributable among the survivors as above provided.

"Should, however, none of my said three grand-children, nor the issue of any, survive me, or, if at any time within the twenty-one years after the death of the last surviving grand-child, no issue of any grand-child still survive, then the distribution of both income and principal hereinabove provided as to the other two-thirds of my residuary estate shall be of, and include, the entire three-thirds thereof."

A copy of the will and codicil, certified by counsel to be a true and correct copy, is annexed hereto.

The fund presently accounted for was awarded to the present accountants by adjudication of Stearne, J., dated April 13, 1942, in trust for Charles Carmalt Willis, and the occasion of the filing of the present account was the death on May 15, 1956, of the said Charles Carmalt Willis, cotrustee and cestui que trust for life . . .

As recited above, Charles Carmalt Willis, cestui que trust for life, died on May 15, 1956, his wife, Edith Willis, having predeceased him on July 3, 1945. They were survived by no issue and by writing, dated December 14, 1942, a photostatic copy of which, certified by counsel to be a true and correct copy, is annexed hereto, the said Charles C. Willis released his power of appointment under the will of the present testatrix. He is also stated to have left a will, of which Provident Trust Company of Philadelphia is executor, but in which he failed to exercise his power of appointment under the will of testatrix.

The said Charles Carmalt Willis having survived testatrix and his wife, Edith Willis, and having died without having exercised his power of appointment, the statement of proposed distribution suggests that the will of Mary Willis, the present testatrix, does not provide specifically for the disposition of the principal and income of the trust for the said Charles Carmalt

Willis, and requests the auditing judge to determine the following questions:

"(1) Has an intestacy occurred?

"(2) If an intestacy has not occurred, has the trust for Charles Carmalt Willis terminated and is the corpus of that trust to be distributed to the trustees of the trusts created under the other provisions of the will?

"(3) If the trust under Item Fourteenth of the Will had not terminated, who are the beneficiaries entitled to the income and principal of the trust?

"(4) If an intestacy has not occurred, has the trust terminated for purpose of entitling the corporate trustee to terminal commissions?"

Mr. Hauptfuhrer, in behalf of the executor of the estate of Charles Carmalt Willis, contends that testatrix has failed to provide for the disposition of the share of the residue under the factual situation which actually occurred and that consequently an intestacy results. He argues that the instant case is controlled by Knox's Estate (No. 2), 328 Pa. 188 (1937), and Verner Estate, 358 Pa. 280 (1948).

Mr. Brown, on the other hand, maintains that failure to provide for the contingency that the son, Charles, might die after, rather than before his wife, Edith, was an obvious inadvertence that should be corrected by the court under authority of Sower's Estate, 383 Pa. 566 (1956).

In approaching a problem of this character, we must bear in mind the deeply entrenched rule of law, so aptly set forth by Mr. Justice Bell in Cannistra Estate, 384 Pa. 605 (1956):

"No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail! This is the reason why so many cases continually proclaim that the pole star in the construction of every will is the testator's intent.

Moreover, 'The testator's intention must be ascertained from the language and scheme of his will: "it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words": Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]': Sowers Estate, 383 Pa. 566, 119 A. 2d 60."

The testamentary plan in the present case can be readily charted. At the time the will was executed, decedent had a son, Charles, a daughter, Ella, and three grandchildren, Helen Gilberta Rice, Carmalt Willis Adams and Harry Lawson Adams, children of a deceased daughter, Gilberta Adams. The residuary estate was accordingly divided into three equal parts and a one-third share was given to each line of descendants. The distribution varies slightly within each line, but, in general, the pattern is to pay income to descendants living at testatrix' death and then to their descendants for a further period of 21 years and, finally, to distribute principal to the latter group. In each trust provision is made for an ultimate failure of the line, and in each trust the disposition in that event is identical, distribution "as to the other two-thirds . . . shall be of, and includes the entire three-thirds thereof." Thus what testatrix contemplated was a stirpital distribution of her property extending, possibly, over two generations, with cross-remainders in the event a particular line should fail.

With respect to the trust for Ella Cora Heyl and her issue, testatrix provided for all contingencies that might cause a failure of the line, directing that in any of these events the corpus of this trust should be added to that of the two other trusts. Similarly, she covered all contingencies that might cause a failure of the Adams line, providing that in any of these events the corpus of the Adams trust should be added to that

of the other two trusts. Testatrix attempted to do the same with the trust for Charles, directing that in the events mentioned the principal of this trust should, in like manner, be added to that of the others. It cannot be seriously doubted that her intention as to this share, in the single event which she overlooked, was the same as with respect to the other two shares.

To reach a contrary conclusion would require us to assume that testatrix had some reason to differentiate between the disposition she would wish to make of Charles' trust if he died childless *after* Edith instead of *before* her. This would seem entirely unlikely since she obviously wished Charles to have no more than a life interest and the position of all persons who might take after the death of the survivor of Charles and Edith would be the same, regardless of which was the survivor.

In any matter of construction where intestacy is an alternative, that construction is always favored which avoids an intestacy: Fitzgibbon's Estate, 272 Pa. 345 (1922). The presumption is that testator intends to dispose of his entire estate and not die intestate as to any part of it. The duty of the court is to construe a will so that no intestacy, partial or entire, will occur: Duffy's Estate, 313 Pa. 101 (1933). All doubts are resolved against an intestacy: Siple v. Greumelli, 357 Pa. 237 (1947). See also Carmany Estate, 357 Pa. 296 (1947); Walker's Estate, 376 Pa. 16 (1954).

It seems apparent from a reading of this carefully drawn and complicated testament that testatrix definitely intended to make a complete disposition of her whole estate and that she did not wish any portion of it to pass under any circumstances under the intestate laws.

In each of the three paragraphs we are studying (14th, 15th and 16th), testatrix states:

"Pending this trust for payment of income, as aforesaid, should the income share of any income taker be released by death without surviving issue, *there shall be no lapse*, but the share so released shall thereafter become part of the total income, and be distributable among the survivors as above provided." (Italics supplied.)

Although this language applies only to income distributions, it points up sharply testatrix' awareness of the possibility that she might not have made a complete disposition of the income and her desire to prevent the occurrence of such a vacuum with a resulting intestacy.

The auditing judge agrees with Mr. Brown that this case is controlled by Sowers' Estate, 383 Pa. 566 (1956), in which the Supreme Court said the words "death or" were omitted by mistake in the will, Mr. Justice Bell, said, at page 572:

"To hold otherwise would, we repeat, produce the absurd result that there would be an intestacy as to one-third of the principal so far as his children were concerned but no intestacy of principal if a child died before the death or re-marriage of his wife, in which event the trustees were directed to pay over to the lawful issue of such deceased child 'the full one-fourth part of one-third of said principal fund from which my said beloved wife was receiving the income. . . .'

"In this dilemma we are convinced that the testator's intention would best be fulfilled and the interest of Justice best be served by holding that the words 'death or' were omitted inadvertently and by mistake in the aforesaid sub-paragraph of his will. Such a construction ties in with and harmonizes all the other paragraphs and provisions of testator's residuary estate trust *both as to income and principal*." See also Josephs Estate, 8 D. & C. 2d 417.

We have examined Knox's Estate (No. 2), supra,

and Verner Estate, supra, the cases relied upon by Mr. Hauptfuhrer, and believe them to be distinguishable. In each of those cases testator failed to provide for the contingencies which actually happened as a result of a *complete failure to consider* the possibility of such occurrences. In the present case, testatrix obviously wished to cover the contingency which has occurred by *failure through an oversight* to give expression to her apparent intent.

It would be absurd to impute an intention to testatrix to divide the principal of this trust upon Edith's death between the other two trusts, if Charles should die without issue, in Edith's lifetime, and yet to distribute the property under the intestate laws if Charles, still without issue, should happen to survive his wife. Obviously her intent did not turn upon the accident of whether Charles or Edith died first, but, rather, upon whether Charles, in default of exercise of his power of appointment, left issue capable of taking at the death of the survivor of himself and his wife. It would be equally illogical to conclude that testatrix could have intended that any portion of the property over which Charles had power of appointment should revert to his estate by operation of law to pass under his will, even though he failed to exercise his power to appoint (actually, deliberately released it).

We have therefore reached the conclusions that the words: "If the said Charles survives me and dies without issue surviving him," were inadvertently omitted from the last subparagraph of paragraph fourteenth and that the will must be construed as if this language were actually contained therein.

We are fortified in our conclusion that this language was omitted by testatrix through inadvertence by comparing her will with that of her husband, James Carmalt Willis, whose trustees have filed an account, which is being audited and adjudicated of even date herewith. It must, of course, be conceded that ordi-

narily little help can be obtained in attempting to glean a testatrix' intention, by examining the will of a husband, or of any other person. It is apparent, however, that testatrix had her husband's will before her when she prepared her own. The preamble to her husband's will contains an "in terrorem" clause forfeiting the benefits of any legatee who should ". . . dispute my said Will in any part thereof". In the codicil to her will testatrix inserted a similar clause directing a forfeiture of all benefits under her will if the husband's will is challenged. The codicil provides:

"And Whereas, I am advised that there is some question as to whether or not my said husband's Will in some or all of the above provisions, offends the rule of law which forbids the creation of perpetuities in estates, and it is my desire that his intention should be carried out in so far as is possible, and that the persons to whom income is given shall be permitted to receive the same wherever possible. Now, Therefore, I do hereby provide and declare that if any of my grandchildren, or their issue, shall, directly or indirectly, institute or take any steps to frustrate the intention of my said late husband as expressed in his Will and as hereinabove interpreted by me, such grandchild or great-grandchild shall forthwith forfeit all and every the interests, devises and bequeaths (sic) given to him, her or them, in my Will to which this is a Codicil."

A study of testatrix' will reveals that her testamentary plan is fashioned substantially along the same lines as the one adopted by her husband. In the husband's estate, there is absolutely no doubt that the one-third held in trust for their son, Charles, under the precise existing factual situation, "shall revert to and become part of my residuary Estate". We think testatrix intended to distribute her estate generally in the same manner as her deceased husband disposed of his estate.

The balance of principal shown by the present account will accordingly be awarded back to the accountant to be retained by it in equal shares in the trusts for Marion W. H. Chauncey and for the so-called "Adams grand-children" and their issue.

The trust for Charles Carmalt Willis having thus terminated, even though the principal in remainder is to be awarded back to the accountant to be added to the other two continuing trusts, the accountant claims that it is now entitled to terminal commissions on the corpus of the share so terminated and credit for payment of same in the sum of $3,360.61, which counsel for the accountant, in his appearance slip, requested should be reduced to $2,946.06, is taken in the account. The auditing judge is not at all certain that the accountant would be entitled to terminal commissions under the facts and circumstances of this case, but as there were no objections to the request by any of the parties in interest, commissions will be allowed as claimed. In the subsequent calculation of commissions on the two other shares of the residue which thus become enriched by distribution of the fund presently accounted for, it must be remembered that the accountant has already received its terminal commissions on the share presently distributable, and if, for any reason, claim is ever made by the accountant for additional commissions on so much of the continuing trusts as represents enrichment by the present distribution, the accountant is directed to furnish all parties in interest, as well as the court, with notice of its intention to claim such additional commissions, with full and complete explanation as to the source of the funds upon which such additional commission is claimed, if any, and the basis of their claim for such additional commissions. . . .

And now, May 4, 1957, the account is confirmed nisi.